STATE EX REL. CITY OF MADISON, Plaintiff, vs. INDUSTRIAL COMMISSION, Defendant.

*March 12—April 5, 1932.*

For the plaintiff there was a brief by *Theodore G. Lewis,* attorney for the city of Madison, and *Robert Cunningham,* city attorney of Janesville, *O. S. Loomis,* city attorney of Mauston, and *L. McPherson,* city attorney of Superior, of counsel, and oral argument by *Mr. Lewis, Mr. McPherson,* and *Mr. Loomis.*

For the defendant there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

A brief was also filed by *John M. Niven,* city attorney of Milwaukee, as *amicus curiæ.*

NELSON, J. The claim of the city of Madison was made pursuant to the provisions of ch. 29, Laws of 1931, special session, and its validity in whole or in part depends upon the proper construction to be given to said chapter.

The city of Madison contends that while sec. 2 (1) unmistakably limits the allotment or distribution thereunder to counties administering outdoor poor relief under the county system and to cities, towns, and villages administering outdoor poor relief under the local system, sec. 2 (2) contains no such limitation; that the language "there shall be paid to counties and cities, towns and villages administering outdoor poor relief" is plain and unambiguous and

amply broad to include a city which in 1931 actually rendered outdoor poor relief, as defined by said section, although within a county administering outdoor poor relief under the county system; that it was the duty of the Industrial Commission to consider its claim on the merits, give consideration to its proofs, determine the amount of the allotment or distribution to which it was entitled, and certify the amount thereof to the state treasurer, with directions to pay to it twenty-five per cent. of the amount found.

The Industrial Commission, on the other hand, contends that sec. 2 (1) is plain and unambiguous and designates the governmental units to which allotments or distributions may be made; that the governmental units mentioned and described in sec. 2 (1) are the only governmental units which may legally receive allotments under the act; that sec. 2 (2) must be read as though the language "under the county system" and "under the local system" found in sec. 2 (1) were specifically repeated therein following the words "administering outdoor poor relief;" that the omission of the clauses "under the county system" and "under the local system" from sec. 2 (2) may be explained on the theory that the legislature sought to effect an economy of words and to avoid unnecessary repetition; that since the primary purpose of the act was to provide relief to the unemployed, and since poor relief was theretofore administered only by counties under the county system or by cities, towns, and villages under the local system, and since the legal obligation to render poor relief rested only upon either counties or cities, towns, and villages, the act should be construed to apply only to such units as were legally obligated to render outdoor poor relief in 1931 and which will be similarly obligated to administer outdoor poor relief during 1932; and that the legislature could not have intended that an allotment or distribution of any part of the fund should

be made to a municipality not specifically obligated by law to use such allotment for outdoor poor relief purposes.

Though numerous contentions are made, the question for decision may be narrowed down to this simple question: Does sub. (2) of sec. 2, ch. 29, authorize an allotment or payment of money to a municipality situated in a county which in 1931 administered outdoor poor relief under the county system?

In construing a statute it is the duty of the court to ascertain if possible from the law itself the legislative intent and to give it such meaning as the legislature intended. *Mattek v. Langlade County,* 204 Wis. 311, 236 N. W. 125; *Will of Schilling,* 205 Wis. 259, 237 N. W. 122; *Dagan v. State,* 162 Wis. 353, 156 N. W. 153; *Milwaukee Northern R. Co. v. Delaney,* 156 Wis. 141, 164 N. W. 825. When words of a statute are not explicit the intent of the legislature is to be collected from the context, the occasion and necessity of the law, the mischief felt, and the objects and remedy in view. *State ex rel. Thieme v. Gregory,* 202 Wis. 326, 232 N. W. 546. The language of a statute must be construed with reference to its context and the purposes sought to be accomplished. *Wisconsin Livestock Asso. v. Bowerman,* 202 Wis. 618, 233 N. W. 659.

No one can doubt that the primary if not the sole purpose of ch. 29 was to provide emergency relief to the unemployed. We may take judicial notice of the fact that commencing late in 1929 and continuing down to the present time depression and unemployment have existed throughout the length and breadth of this land; that during the year 1931 the unemployment situation was particularly acute; that at the time the legislature was in session, the winter of 1931 and 1932 promised no substantial change for the better. To relieve this situation the governor convened the legislature in special session primarily for the purpose of

enacting legislation looking to the raising of taxes for the purpose of permitting the state in a large way to deal with the pressing problems of poverty and unemployment. After many weeks of consideration of the problems by the legislature, ch. 29 resulted.

It is perfectly obvious that the purpose of sec. 2 (1) was to make immediately available nearly $3,000,000 for the use of those agencies of this state upon whom rested the legal obligation to relieve want and suffering and whose legal duty required the supplying of food, clothing, fuel, etc. This section assumes the existence of a general, state-wide condition, for the allotment to be made thereunder is on·the one dollar per inhabitant basis, without regard to the amount of relief rendered or administered during 1931.

Sec. 2 (2), on the other hand, provides allotments which necessarily require considerable time to determine the amount of outdoor poor relief expenditures for 1931, and considerably more time to determine what part or proportion of the labor costs of public works undertaken to provide employment for the unemployed in 1931 represents the equivalent of outdoor poor relief.

A comparison of the language found in sec. 2 (1) with the language found in sec. 2 (2) reveals a difference in phraseology which, as we view it, is not without significance. In view of the facts that the original relief bill was introduced in the Assembly on December 11, 1931, that it and its substitutes were before· the legislature for a considerable period of time before ch. 29 was finally enacted, and that during all of that time the several bills were subjected to careful scrutiny and occasioned extended legislative debates, it can hardly be claimed that such difference in language was due to inadvertence or to a mere desire to effect an economy in the use of words. It is clear that if the legislature had intended that only such counties or cities,

towns and villages as were administering outdoor poor relief under either the county or local systems should be entitled to allotments or distributions under sec. 2 (2), it would have been a very simple matter to insert in sec. 2 (2) apt words or phrases which would have expressed such intention. Had the legislature intended to limit the allotments provided in sec. 2 (2) to those counties and municipalities mentioned in sec. 2 (1), such intention could have been made to appear by inserting after the words "administering outdoor poor relief," either the words "under the county or local system" or "under ch. 49 of the Statutes." Such intention might have been clearly expressed by inserting the word "said" or the words "the aforesaid" before "counties, cities, towns and villages." The use of any of these words or phrases at the places mentioned would have clearly connected up "counties, cities, towns and villages" mentioned in sec. 2 (2) with those mentioned in sec. 2 (1), and would have limited the allotments provided by sub. (2) to the counties, etc., mentioned in sub. (1)

To construe the statute in accordance with the contentions of the Industrial Commission would result in certain inequity and discrimination between cities operating under the county system and those operating under the local system, both of which in 1931 had undertaken public works to relieve unemployment. Under the construction placed upon this chapter by the Industrial Commission, cities operating under the local system would be entitled to allotments under sub. (2), while cities operating under the county system would be entitled to no allotment at all. It must be presumed that the legislature knew the existing facts. As was said in *Milwaukee v. State,* 193 Wis. 423, 448, 214 N. W. 820, "it must be presumed that the legislature of the state, being its supreme law-making body, has made careful investigation of the entire situation." The legislature undoubtedly knew

that only twenty-four counties of this state were relieving the poor under the county system; that these counties contain many of the larger cities of this state—Milwaukee, Madison, Superior, La Crosse, Beloit, Janesville, Chippewa Falls, Prairie du Chien, Monroe, Jefferson, and Portage; that many of these cities, though operating under the county system, had met the burden of unemployment by undertaking public works to provide employment for the unemployed; that unemployment and the need of relief were most acute in the cities; that there are comparatively few public works which may be undertaken by counties while the reverse is true of cities. All of these considerations give countenance to the contentions of the city of Madison and lend support to them. To construe this statute so that only cities operating under the local system may receive allotments based on labor costs of public works undertaken to relieve unemployment would produce not only unfair but rather absurd results.

Nor do we think that these considerations are outweighed by the argument that the legislature intended to make allotments under sub. (2) only to those counties or cities which were in 1931 and will be in 1932 legally obligated to render or administer outdoor poor relief. Had the legislature been dealing with a normal rather than an abnormal situation there would be much force to this argument. In normal times it might be more possible to spell out of this enactment an intent of the legislature to allot funds only to those counties or municipalities upon which the law placed the obligation to relieve the poor in 1931 and upon whom rests the legal burden to relieve them in 1932.

The legislature, in attempting to relieve unemployment, might well have felt that counties and cities which in 1931 had manifested such great solicitude for their unemployed as induced them to undertake public works to create em-

ployment, would keep faith with the legislature and continue to feel and manifest the same sympathetic concern for their unemployed in 1932 and meet their responsibilities with the same undaunted spirit which animated them in 1931. While it is true that there is no provision in ch. 29 which legally obligates a city operating under the county system to employ its allotment under ch. 29 for the purpose of relieving unemployment in 1932, the legislature may well have felt no concern in that regard. The receipt by cities of allotments under ch. 29 will tend to place them in better financial positions to carry on the work of relieving unemployment in 1932, which still continues to be an outstanding problem.

We conclude that the contentions of the city of Madison are sound and that sec. 2 (2) of ch. 29 should be construed so as to entitle the city of Madison and all counties, cities, towns, and villages which administered or rendered, during 1931, outdoor poor relief as defined by said act, to allotments regardless of whether such county, city, or other municipality was operating under the county or local system.

One question remains: Is the city of Madison entitled to any allotment by virtue of having appropriated and paid to the Madison Public Welfare Association in 1931 the sum of $11,000? Sec. 66.04, sub. (6), is as follows:

*"Public welfare associations.* Any city may appropriate money for charitable and philanthropic purposes, to provide relief and assistance to those in need or to promote the general welfare of the poor and to alleviate poverty. Such appropriation may be made directly to any corporation located in such city organized for the purposes set forth herein. When so appropriated the money shall be expended and accounted for by such corporation in such manner as the council may direct."

It is perfectly apparent that this section authorized the city of Madison to make appropriations to public welfare

associations for charitable and philanthropic purposes, to provide relief and assistance to those in need or to promote the general welfare of the poor and to alleviate poverty. Whether all or any part of the $11,000, under the proofs submitted or to be submitted to the commission, shall amount to "expenditures for outdoor poor relief" must be determined by the commission. If the proofs show that such sum, or any part thereof, was expended for outdoor relief, then to that extent it should be considered as an expenditure well within the provisions of sec. 2 (2) of ch. 29.

We appreciate the great responsibility which this act, as construed by us, places upon the Industrial Commission. We sense many administrative problems which may confront the commission, particularly those which will arise from the lack of or inadequacy of proper proofs of the several facts which must be found to have existed in order that allotments may be made, but we confidently feel that the commission will be able to perform this duty in the same fair and efficient manner that has heretofore characterized its public services.

We express no opinion on the merits of the claim. Whether the expenditures for labor set forth in the claim of the city of Madison were made under circumstances which entitle the city of Madison to an allotment amounting to twenty-five per cent. thereof is for the commission to determine.

*By the Court.*—Let a peremptory writ of *mandamus* issue in accordance with this opinion.