Estate of Bohnsack: Thauer, Guardian *ad litem,* Appellant, v. Hughes, Trustee, and another, Respondents.

*June 5—June 28, 1963.*

For the appellant there was a brief by *Richard C. Thauer* of Watertown, guardian *ad litem,* and oral argument by *David L. MacGregor* of Milwaukee.

For the respondent Moravian Church there was a brief by *Niemann & Hibbard* of Watertown, and oral argument by *Paul Hibbard.*

GORDON, J.  The trial court concluded that the testatrix did not intend to include the illegitimate issue of her daughter when she provided in her will that the balance of a trust estate "shall be given to her issue, if any survive her." We reach the same conclusion.

The facts of the case are not in serious dispute, although the legal significance of such facts is contested. Olga Bohnsack died testate on June 29, 1961. Her will had been executed on May 5, 1960, and republished by two subsequent codicils. The will left the residue of her estate in trust for her daughter, Vernette Bohnsack, and also provided as follows:

". . . and I further direct that this trust estate in any event shall terminate upon the death of my daughter, Vernette Bohnsack, and that the balance of the corpus and accumulated income remaining in said trust estate at the death of my daughter, Vernette Bohnsack, *shall be given to her issue, if any survive her,* and if my daughter should die without issue surviving her, in such event the said balance in the trust estate shall be paid to Moravian Church of the city of Watertown, Wisconsin." (Our emphasis.)

The daughter, Vernette, age thirty-eight, died on April 2, 1962, approximately eleven months after the death of the testatrix. Vernette never gave birth to a legitimate child;

she had never married. She was, however, the mother of two illegitimate children.

The first illegitimate child was born on April 4, 1951. Vernette's parental rights to this child were terminated on September 25, 1951, and the child was adopted on December 17, 1952. Vernette gave birth to another illegitimate child on November 23, 1954. Parental rights to this child were terminated on February 15, 1955, and the child was adopted on July 2, 1956. The identity of the adopting parents is not disclosed in the record.

In his memorandum opinion, the trial judge asserted the following with reference to Olga Bohnsack:

"Beyond question, decedent was aware of the birth of the first child and, almost certainly, of the second; . . ."

This conclusion on the part of the trial judge is amply substantiated by the record. The appellant relies on this knowledge on the part of the testatrix to sustain his contentions on this appeal. We have reached the conclusion that the testatrix's awareness of the birth of the two illegitimates is insufficient, in itself, to support appellant's position.

Two propositions of law are unchallenged upon this appeal. The first is that Olga Bohnsack having died testate, the court's responsibility is to determine her intentions as expressed in her will. *Will of Kaufer* (1931), 203 Wis. 299, 301, 234 N. W. 504. The second unchallenged proposition is that a devise to children or issue presumptively refers to legitimate rather than illegitimate children. In *Will of Scholl* (1898), 100 Wis. 650, 659, 76 N. W. 616, the court said:

"The description 'child,' 'son,' 'issue,' and words of that nature, includes legitimates only."

See Anno. 34 A. L. R. (2d) 4 (1954). While there is some support for the contrary view, the great weight of authority is that *prima facie* only legitimates are included.

*Marsh v. Field* (1921), 297 Ill. 251, 256, 130 N. E. 753, 755; 2 A. L. R. 972 (1919); Wills—Construction—Particular Words: "Children" Held to Mean only Legitimate Children, 27 Harvard Law Review (1913–1914), 691.

The approach of the Wisconsin courts to this problem was discussed in *Will of Scholl* (1898), 100 Wis. 650, 661, 76 N. W. 616. There this court commented on the injustice of the harsh common-law rule pursuant to which illegitimates were not deemed to have any inheritable blood from their father or mother. We recently decided the case of *Estate of Traver* (1963), 18 Wis. (2d) 416, 418, 118 N. W. (2d) 932, in which we noted the severity of the common-law rules concerning illegitimate children. In *Will of Scholl,* at page 660, the court pointed out that now "less evidence than under the old system will sufficiently show that the intention was to include illegitimate children."

Notwithstanding the trend toward ameliorating the treatment of illegitimates, it is still presumed under the law of Wisconsin that a bequest to children or issue excludes illegitimates unless a contrary intention can be ascertained to upset such presumption.

We previously noted the importance which the appellant attributes to the fact that Olga Bohnsack knew of the existence of the two illegitimate children of her daughter, Vernette. The appellant urges that in light of *Will of Kaufer* (1931), 203 Wis. 299, 234 N. W. 504, the presumption has been rebutted.

We have carefully examined *Will of Kaufer* and conclude that it should not be applied to sustain the appellant's argument that the presumption has been rebutted. Notwithstanding *Will of Kaufer,* mere knowledge of the birth of an illegitimate child does not rebut the presumption that a bequest to issue means only legitimate issue.

Under the facts of the *Kaufer Case,* the bequest was "to the children of my deceased sister Betty Kaufer Friend, to be

divided equally among those living at the time of my death, including the child or children of the deceased child by right of representation." When the petitioners in that case alleged that the testator knew that the deceased sister was survived only by illegitimates, the court said that this was "sufficient to rebut the presumption that legitimates only were intended." We are obliged to modify the application of the foregoing quotation so that it will be applicable only when the existence of the illegitimate issue was known to the testator and also (1) the illegitimate was a part of the family circle or (2) was otherwise recognized by the testator as an object of his natural bounty.

In the case at bar, there is no evidence that either the testatrix or her daughter ever saw the two illegitimate children after Vernette's parental rights were terminated or after the children were given out for adoption. To treat the presumption as rebutted by the mere knowledge on the part of the testatrix of their having been born is to ignore the vital fact that these illegitimate children were at no time regarded by the testatrix as a part of her family.

By the breadth of its expression, the *Kaufer Case* could be applied to rebut the presumption solely because of Olga Bohnsack's knowledge of the birth of the illegitimate children. It is for this reason that we are persuaded that *Will of Kaufer* must be deemed to be modified by this opinion.

We conclude that the trial court correctly ruled that Olga Bohnsack did not intend to include her daughter's illegitimate children in her will. Respondent's counsel stated the matter forcefully when they argued in their brief:

". . . there is no evidence in the record to suggest why Olga Bohnsack would, in death, recognize something she never did in life."

*By the Court.*—Judgment affirmed.