NORTHWESTERN NATIONAL BANK OF
MINNEAPOLIS v. GORDON SIMONS, JR., AND OTHERS.
LAURIE ANN DAVIES, NOW KNOWN AS
LAURIE ANN PECK, APPELLANT.

242 N. W. 2d 78.

April 23, 1976—No. 45572.

*John F. Bonner, Jr.,* for appellant.

*Callinan, Raidt & Haertzen* and *Arvid W. Rydholm,* for respondents Danielson.

Heard before Peterson, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Laurie Ann Davies, a 13-year-old child who was born to unwed parents who never married and was subsequently adopted by her natural father, appeals from an order of the Hennepin County District Court which construed a trust so as to exclude her from beneficiary status because of her illegitimacy or adoption.

In 1921 William H. Davies and Mary F. Davies conveyed property into a trust which was to run during the lives of seven specified persons. The trustees were to pay income to the settlors during the life of William, then to certain named persons including the settlors' son, Edward C. Davies.

The trust provided that after the death of Edward C. Davies and his widow, if any, his share should be paid over to "* * * the children of said Edward C. Davies who may survive from time to time, in equal shares, share and share alike, the issue surviving from time to time of a deceased child taking the share their parent would have taken if living * * *." Before he died, Edward C. Davies had two children, Esther and Dorothy. Esther predeceased him, however, leaving three offspring of her own. These are Gordon Simons, Jr., John V. Danielson, Jr., and Laurie Ann Davies (now known as Laurie Ann Peck). These three, then, if they are "issue surviving from time to time of a deceased

child" are entitled to the share that would have been paid to their mother, Esther, if she were alive. The dispute in this case is whether Laurie Ann, because of her illegitimacy or the adoption by her natural father, is excluded from the class denominated "issue surviving from time to time."

The trust provides that at the termination of the trust the principal should be paid over to whoever is then entitled to income distributions.

The trustee, Northwestern National Bank of Minneapolis, brought suit in the district court of Hennepin County requesting a determination whether illegitimacy or adoption prevents Laurie Ann from being entitled to receive trust distributions. The two sons of John V. Danielson, Jay and Judd, appeared by guardian ad litem as contingent beneficiaries. On cross-motions for summary judgment the district court ordered judgment that Laurie Ann is not entitled to receive distributions of either principal or income from the trust.

It is axiomatic that a court's cardinal purpose in construing a trust is to ascertain the intent of the settlor. In re Trust Created by Moulton, 233 Minn. 286, 46 N. W. 2d 667, 24 A. L. R. 2d 1092 (1951). In the instant case, however, settlors' intent is ambiguous. The trust uses both the term "issue" and the term "legal issue," in different provisions.

The use of these terms could imply several testamentary intents. Settlors could have intended that the use of the term "issue" refer to all biological issue and added the term "legal issue" because they believed that the issue of legally adopted children might not be "issue." If settlors' purpose was to exclude illegitimates, it is unlikely that they would have used the term "legal issue" in one part of the trust and yet been satisfied with using simply "issue" elsewhere to convey the same meaning. If they had wished to restrict the term "issue" to legitimate issue, they would have used the term "legal issue" there as well. Alternatively, it can be argued that "issue" meant only legitimate issue because there is no provision specifically referring to illegitimate

children whereas there is provision for adopted children. It may be, however, that settlors simply did not wish to contemplate the possibility of illegitimate offspring on the face of the family trust.

Respondents argue that at the time the trust was written "issue" was understood at common law to exclude illegitimates.[1] It is not certain, however, that the settlors of this trust intended to give the word its common-law meaning, nor is it certain that social policy in Minnesota at the time favored denying illegitimate offspring the right to qualify as "issue" in a trust.[2] There are no Minnesota cases on this question, but this court did criticize the common law's prejudice against illegitimates in Reilly v. Shapiro, 196 Minn. 376, 379, 265 N. W. 284, 286 (1936), as follows:

"* * * Every human instinct is moved toward extending a helping hand to such child, already laboring under a handicap impossible of removal. That is why the old and harsh rules of the common law have been modified and in many instances removed by statutory enactments."

When there is some doubt, either from family circumstances,

---

[1] An illegitimate child in Minnesota is now entitled to inherit under intestate succession. Minn. St. 525.172. Because this case involves a trust written in 1921, however, that statute has no direct relationship to the case at hand. Eaton v. Eaton, 88 Conn. 269, 91 A. 191 (1914); Id. 88 Conn. 286, 91 A. 196 (1914), allowed an illegitimate child to qualify as "children" under a will when testator knew of the illegitimate child. Other jurisdictions, however, refused to include illegitimates as "children" or "issue." See, 2 A. L. R. 930, 972. That authority is ambiguous, however, in that it indicates that the term "issue," where used as a word of purchase, "does not include illegitimate offspring *unless a different intention appears from the context.*" (Italics supplied.)

[2] At the time this trust was drafted, Minnesota inheritance law, G. S. 1913, § 9412(8), stated: "The word 'issue,' as applied to the descent of estates, shall include all the lawful lineal descendants of the ancestor." It is not clear whether the word "include" was a word of enlargement or limitation, however.

the behavior or knowledge of a settlor, or from the trust instrument itself, this court will hold that illegitimate issue are to be included as issue.[3] It has been argued that one of the usages of the term "legal issue" in this trust instrument is mere surplusage. This does not convince us that all uses of the adjective "legal" before the term "issue" are frivolous, however. While the evidence admittedly is tenuous, there is sufficient evidence in the wording of the trust to indicate that the settlors may have intended only to exclude the illegal issue of legally adopted children and to include all issue of natural children. This evidence prevails over the common law's prejudice against illegitimates.

We express no opinion on whether the use of the word "issue" would be adequate in other circumstances to restrict a testamentary transfer only to legitimate children. It is understandable that a settlor may not wish to explicitly contemplate the idea that his lineage might include children born out of wedlock in the words of the family trust. Legislation defining the terms "issue" and "children" for the purpose of testamentary dispositions is certainly appropriate.[4]

The right of appellant to receive distributions from the trust, moreover, was not terminated by her adoption out of the family. While the settlors provided for children to be adopted into the family, no provision was made for children adopted out; hence settlors' intent remains ambiguous. The social policy evinced at

---

[3] The Wisconsin Supreme Court, in In re Trust of Parsons, 56 Wis. 2d 613, 619, 203 N. W. 2d 40, 43 (1973), defined the term "children" to include illegitimate children under the provisions of a will where the illegitimate child was "a part of the family circle." The illegitimate grandchild had been born before his parents were married, and the marriage of his father and mother was entered into without court permission required because the father was under court order to provide support for the child of a prior marriage. The court found that in these special circumstances, although the testator never knew the illegitimate child, exclusion of the child could not have been intended.

[4] See, Note, 57 Marq. L. Rev. 173.

the time the trust was written, however, favors allowing an adopted-out child to inherit from his natural parents. In Roberts v. Roberts, 160 Minn. 140, 199 N. W. 581 (1924), this court held that an adopted-out child would inherit under intestate succession because the legislature had not spoken expressly to this point in the adoption statute, G. S. 1917, § 7157. This court similarly held in In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925 (1925), that a second adoption did not change the status of the adopted child as heir of the first adoptive parents. While these cases involved intestate succession rather than the distribution of property under a trust, they evince a social policy favoring adopted-out children.[5]

Consistent with settlors' intent and social policy at the time of this trust's drafting, we hold that neither appellant's illegitimate birth nor her adoption out of the family prohibits her inheritance under this trust.

Reversed.

PETERSON, JUSTICE (dissenting).

The cardinal purpose in construing a trust, as the majority opinion acknowledges, is to ascertain the intent of the settlor—in this case, to ascertain and give effect to the dispositive intent expressed in the trust by the use of the word, "issue." The intent of the settlor in the use of that word of art must be considered in terms of its meaning and usage in 1921, when the trust was executed, not in terms of any different meaning or usage in 1976.

The parties agree that the trust was drafted by an experienced attorney, skilled in trust and estate law and accordingly knowledgeable in the limitation inherent in the word, "issue." The use of that word 50 and more years ago clearly excluded illegitimate offspring, thus excluding the child born out of wedlock to the settlors' granddaughter. This was the settled rule of the common

---

[5] Since then, Minnesota has amended the law providing that an adopted-out child should not inherit, Minn. St. 259.29, but this is not relevant here.

law. See, Restatement of Property §§ 265, 292; 1 W. Blackstone, Commentaries, 447; 2 Kent, Commentaries (13 ed.), § 212; 4 Kent, Commentaries (13 ed.), §§ 413-417. An annotation at 2 A. L. R. 930, 972 (which was published in 1919), discussing the meaning of the term "issue" where used as a word of purchase, contained this preface:

"It is a generally recognized rule (except in Connecticut) that the word 'issue' must be taken prima facie to mean legitimate children, and does not include illegitimate offspring unless a different intention appears from the context [citing cases]."

This state's statutory canons of construction in effect in 1921 provided that "issue," as applied to the descent of estates, included all the *lawful* lineal descendants of the ancestor. Gen. Stat. 1913, § 9412(8). It surely would not be assumed that a draftsman of a testamentary instrument, or a trust having the same purposes and effect, would use the word "issue" differently than the meaning so ascribed to it for intestate succession. It just as surely would not be assumed that a draftsman of such an instrument would intend it to have whatever changing meaning others might at some future date attach to it.

The majority opinion, however, suggests that the settlors' intent is "ambiguous" because the trust instrument in one paragraph employed such words as "legally adopted," "legal child," and "legal issue." This is indeed a slender reed upon which to vault to a conclusion that a settlor, contrary to its then-settled meaning, intended the unmodified word "issue" to include an illegitimate child. The rule of law articulated in the majority opinion represents a significant departure from the acknowledged cardinal purpose when it states: "When there is some doubt, either from family circumstances, the behavior or knowledge of a settlor, or from the trust instrument itself, this court will hold that illegitimate issue are to be included as issue."

The trust instrument is all that is in evidence, and the paragraph upon which that rule of construction is imposed is this:

"Wherever in this Trust Deed it is provided or directed that income or rents, or any share thereof, or any property or interest in property should be paid, turned over or given to the child or children or issue of either of the said Edward C. Davies or Florence E. Sanaker, such designation of a child or children or issue of a child or children, shall include and shall be deemed to include any child or children heretofore or hereafter legally adopted by either of the said Edward C. Davies or the said Florence E. Sanaker, respectively, * * * as the case may be, who shall have so legally adopted such child or children; and such legally adopted child and its issue shall be entitled to the same rights under this instrument and the trust hereby created as if such adopted child were the legal child borne to or begotten by the said Edward C. Davies or the said Florence E. Sanaker, respectively, as the case may be; and the legal issue of any child so legally adopted shall be deemed the legal issue of the person so adopting such child."

This sentence-paragraph, of course, is directed exclusively to the rights of an adopted child and the issue of such adopted child; more specifically, to a "legally adopted" child, such child and its "issue" to be accorded the same rights as if such adopted child were "the legal child" of settlors' own son or daughter. Yet, the majority opinion would derive from this one sentence an intent to grant benefits to an illegitimate child. The recurring use of the modifying word, "legal," in this one sentence, much less than implying a broader meaning to the unmodified word, "issue," serves instead to underscore the settlors' intent to exclude one who is "illegitimate," i. e., not "legal." Having used the words "legal" or "legally" seven times in that sentence (although omitting that adjective once in the initial reference to the "issue" of an adopted child), it concludes with words having the same effect, "* * * and the legal issue of any child so legally adopted shall be deemed the legal issue of the person so adopting such child." Under the terms of the trust, being deemed the "legal" issue of settlors' children is of no more significance than

being deemed their issue, having in mind its meaning and usage in 1921. The words, then, are mere surplusage, probably attributable to the rhythm of its frequent use in that complex sentence. It does not reasonably create an ambiguity in the instrument read as a whole. And nothing in the instrument would indicate the settlors' intent to benefit an illegitimate offspring of his son or daughter. The majority opinion does not resolve the asserted ambiguity in terms of other indications of the settlors' intent; it simply imposes the court's intent. We do not, however, have a roving commission to impose what all of us in our own affairs would consider generous and enlightened if we, not they, were the settlors.

There is, in this view, no occasion to consider the issue as to the subsequent adoption out of an excluded offspring.

I respectfully dissent and would affirm.

MacLAUGHLIN, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson for the following reasons:

(1)   The principle issue is the settlors' intent as to the meaning of the term "issue" on November 30, 1921, the date they executed the trust agreement.

(2)   It seems clear that in 1921 the term "issue" was understood at common law to exclude illegitimates. See Mr. Justice Peterson's dissenting opinion. Further, the statutory law in Minnesota at the time, G. S. 1913 § 9412(8), stated as follows:

"The word 'issue,' as applied to the descent of estates, shall include *all the lawful lineal descendants* of the ancestor." (Italics supplied.)

(3)   Therefore, the court must find language in the trust agreement indicating that the settlors did not use the word "issue" in the sense contemplated by the common law and the statute. Nowhere in the trust agreement can I find language indicating the intent of the settlors that they were using the word

"issue" in a different sense than that accepted at the time by the common law and the statutory law of Minnesota. The trust agreement itself is several pages in length and I believe that the court unduly strains its interpretative power when it determines the intent of the settlors to include illegitimates through the use of one paragraph of the instrument which is entirely devoted to the question of the rights of an adopted child and the issue of an adopted child. I cannot find justification in that paragraph for the decision of the court.

My study of this case leads me to conclude that neither the law nor the facts support the conclusion that in 1921 the settlors intended to include illegitimate children within the terms of their trust agreement. Therefore, I would affirm the trial court.

ROGOSHESKE, JUSTICE (dissenting).

I agree with the dissenting opinions of Mr. Justice Peterson and Mr. Justice MacLaughlin.

KELLY, JUSTICE (dissenting).

I join in the dissents of Mr. Justice Peterson and Mr. Justice MacLaughlin.