COURT OF APPEALS
DECISION
DATED AND FILED

December 7, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP65**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018PR54

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE ESTATE OF MICHAEL LAWRENCE MIKULEWICZ:

AMY CADY-KRECH,

    APPELLANT,

  V.

KIMBERLY A. MITCHELL, MELISSA PAVELKA AND
THOMAS MULLIGAN, PERSONAL REPRESENTATIVE FOR THE
ESTATE OF MICHAEL LAWRENCE MIKULEWICZ,

    RESPONDENTS.

APPEAL from an order of the circuit court for Washburn County: ANGELINE E. WINTON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Amy Cady-Krech appeals an order excluding her as an heir of the Estate of Michael Mikulewicz, who died intestate. Cady-Krech presented evidence raising a rebuttable presumption that Mikulewicz was her father. She further asserted that he raised her and treated her as his daughter. Based on DNA evidence, however, the circuit court found that Cady-Krech was not Mikulewicz's biological daughter. The court further found that Mikulewicz did not adopt Cady-Krech. The court therefore concluded that Cady-Krech did not qualify as Mikulewicz's heir for purposes of intestate succession.

¶2 Cady-Krech argues that the circuit court should not have permitted DNA testing, or considered the test results, because issue preclusion barred the parties from relitigating Cady-Krech's status as Mikulewicz's daughter. Cady-Krech also argues that even if issue preclusion does not apply, the court erred by concluding that she does not qualify as Mikulewicz's heir under the statutes governing intestate succession. Finally, Cady-Krech asserts that public policy considerations required the court to include her as one of Mikulewicz's heirs. We reject each of Cady-Krech's arguments and affirm.

## BACKGROUND

¶3 On November 19, 2018, Kimberly Mitchell filed an application for informal administration of Mikulewicz's estate. The application stated that Mikulewicz had died on October 9, 2018, that he had no surviving spouse, and that Mitchell was his daughter. It further stated that Mitchell had been unable to locate a will executed by Mikulewicz, and that she believed he had died without a will. The application identified two interested persons with respect to Mikulewicz's estate—Mitchell, and a second daughter named Melissa Pavelka. A

2

proof of heirship, which was filed the same day, similarly listed Mitchell and Pavelka as Mikulewicz's only children.

¶4 The application for informal administration was approved on December 21, 2018, and domiciliary letters were issued to Attorney Thomas Mulligan to act as personal representative of Mikulewicz's estate. In October 2019, Mulligan filed a motion asking the circuit court to "determin[e] the heirs of the decedent." The motion alleged that although Mitchell and Pavelka were both bona fide daughters of Mikulewicz, Mulligan had learned that Cady-Krech might also be Mikulewicz's child. Mulligan therefore asked the court to determine whether Cady-Krech was a "proper heir under [Mikulewicz's] estate."

¶5 Mulligan subsequently filed a second motion asking the circuit court to order genetic testing to confirm whether Cady-Krech was Mikulewicz's biological child. The motion alleged that Mikulewicz's remains had been cremated, and it therefore sought to accomplish the genetic testing by obtaining a sample of Mikulewicz's DNA from the Federal Bureau of Prisons. Alternatively, the motion asked the court to order genetic testing by comparing Cady-Krech's DNA to DNA from Mitchell and Pavelka, who were "uncontested heirs and daughters of Mikulewicz."

¶6 Cady-Krech opposed the motion for genetic testing. She submitted a certified copy of her birth certificate, as well as a certificate of live birth, both of which stated that she had been born in Minnesota in November 1973 and listed Mikulewicz as her father. Cady-Krech also provided a certified copy of a divorce judgment from Dakota County, Minnesota, which showed that Mikulewicz and Cady-Krech's mother were married in January 1975 and divorced in August 1976.

3

The divorce judgment stated there were "two minor children as issue of the marriage"—Cady-Krech, who was two and one-half years old at the time, and Mitchell, who was seven months old. The divorce judgment granted Mikulewicz "the permanent care, custody and control" of both children and granted their mother periods of visitation.

¶7 During a June 2020 hearing on the motion for genetic testing, Pavelka testified that Mikulewicz was her father, but she did not have the same mother as Cady-Krech and Mitchell. Pavelka stated that she lived with Mikulewicz from birth until she was seventeen or eighteen years old. Cady-Krech lived with them until Pavelka was about ten years old, but Pavelka had little contact with Cady-Krech after that time. Pavelka testified that Mikulewicz told her "several times" during her childhood that Cady-Krech was not his blood daughter. According to Pavelka, Mikulewicz stated that he believed Cady-Krech was his daughter at the time he married Cady-Krech's mother, and he did not learn that Cady-Krech was not his child until "well after that."

¶8 Cady-Krech testified that after Mikulewicz's divorce from her mother, she lived with Mikulewicz until she was eleven years old. At that point, she and Mitchell were placed in foster care, but they returned to Mikulewicz's home after one year, and Cady-Krech remained there until she was fourteen. Cady-Krech testified that Mikulewicz was abusive and that her relationship with him was contentious. Nevertheless, she asserted that Mikulewicz referred to her as his child and referred to himself as her father, even after she moved out of his home. Although Cady-Krech could not remember when she last had contact with Mikulewicz, she testified that she had maintained relationships with Mitchell and Pavelka after leaving Mikulewicz's home, and until the probate proceedings, they had never referred to her as anything other than their sister.

4

¶9     The circuit court granted Mulligan's motion for genetic testing. The court acknowledged that the evidence Cady-Krech had submitted gave rise to a presumption that she was Mikulewicz's biological daughter; however, the court noted that the presumption was rebuttable.[1] The court found that genetic testing would be relevant to determining Cady-Krech's paternity and was therefore permissible under WIS. STAT. § 885.23. The court rejected Cady-Krech's argument that the divorce judgment listing Cady-Krech as Mikulewicz's child prevented Mulligan from seeking genetic testing in the probate proceedings to determine whether Cady-Krech qualified as Mikulewicz's heir. The court reasoned that the divorce action and probate proceedings involved different issues, and the parties to the probate proceedings were not able to "fully litigate" Cady-Krech's status as Mikulewicz's heir in the divorce action.

¶10     Genetic testing ultimately took place by comparing DNA taken from Cady-Krech, Mitchell, and Pavelka. The testing showed a 98.4% probability that Cady-Krech and Mitchell are half-siblings, a 97.6% probability that Mitchell and Pavelka are half-siblings, and a 0.1% probability that Cady-Krech and Pavelka are half-siblings. During a subsequent hearing in September 2020, counsel for

---

[1] *See* WIS. STAT. § 891.41(1)(b) (2019-20) (stating that a man is presumed to be the natural father of a child if he and the child's mother were married to each other after the child was born but had a relationship with one another during the period within which the child was conceived, if no other man has been adjudicated as, or is presumed to be, the child's father); WIS. STAT. § 891.09(1) (2019-20) (stating that a record of birth kept in the state bureau of vital records is "presumptive evidence" of the birth so recorded); WIS. STAT. § 69.21(1)(c) (2019-20) (stating that a certified copy of a vital record "shall be prima facie evidence of any fact stated in the vital record"); *see also* **DiBenedetto v. Jaskolski**, 2003 WI App 70, ¶¶14-15, 261 Wis. 2d 723, 661 N.W.2d 869 (treating the presumption created by §§ 69.21(1)(c) and 891.09(1) as a rebuttable presumption).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Mitchell and Pavelka argued these test results "circumstantially prove[d]" that Cady-Krech was not Mikulewicz's biological daughter.

¶11     Based on the DNA test results, the circuit court concluded "that Mitchell and Pavelka share the same father,"—i.e., Mikulewicz—"but that Pavelka and [Cady-Krech] do not." The court therefore found that the test results overcame the presumption that Cady-Krech was Mikulewicz's biological child. Consequently, the court held that under the rules of intestate succession, Cady-Krech was "not entitled to be in that class of individuals who would inherit."

¶12     The circuit court acknowledged that an adopted child is treated as an heir for purposes of intestate succession, but it noted there was no evidence that Mikulewicz had ever formally adopted Cady-Krech, and it refused to speculate as to whether the birth certificates and divorce judgment listing Mikulewicz as Cady-Krech's father would have prevented him from subsequently adopting her under Minnesota law. The court found credible Pavelka's testimony that Mikulewicz knew Cady-Krech was not his biological daughter, and it emphasized that if he had nevertheless wanted to ensure that she was included as an heir of his estate, "he could have easily done so by [executing] a last will and testament."

¶13     Cady-Krech now appeals from the circuit court's order excluding her as an heir of Mikulewicz's estate. Distributions from the estate have been stayed pending the resolution of this appeal.

## DISCUSSION

### I. Issue preclusion

¶14     Cady-Krech first argues that the doctrine of issue preclusion prevented the circuit court from ordering genetic testing and from relying on the

test results to conclude that she did not qualify as Mikulewicz's heir. She asserts that her status as Mikulewicz's daughter "was conclusively established in the Minnesota divorce action," and that the parties are therefore barred from "relitigating" that issue in the instant case.

¶15 "The doctrine of issue preclusion forecloses relitigation of an issue that was previously litigated between the same parties or their privies." *Flooring Brokers, Inc. v. Florstar Sales, Inc.*, 2010 WI App 40, ¶6, 324 Wis. 2d 196, 781 N.W.2d 248. We use a two-step analysis to determine whether issue preclusion bars a litigant's claim, asking: (1) whether issue preclusion can, as a matter of law, be applied; and (2) if so, whether the application of issue preclusion would be fundamentally fair. *Id.* We need not reach the second step of the analysis if we determine the first step has not been satisfied. *Id.*, ¶8. The party asserting issue preclusion has the burden to demonstrate that it should be applied in a given case. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999).

¶16 The first step of the issue preclusion analysis presents a question of law that we review independently. *Flooring Brokers*, 324 Wis. 2d 196, ¶7. Under the first step, we must determine whether the relevant issue or fact "was actually litigated and determined in the prior proceeding by a valid judgment and whether the determination was essential to the judgment." *Id.* In addition, if the litigant against whom issue preclusion is asserted was not a party in the prior proceeding, we must determine whether that litigant is in privity with, or has a sufficient identity of interest with, a party to the prior proceeding so as to satisfy due process. *Paige K.B.*, 226 Wis. 2d at 224.

¶17 We conclude Cady-Krech has failed to satisfy the first step of the issue preclusion analysis. On appeal, Cady-Krech's entire argument regarding the

first step of the analysis is as follows: "As to the first test, the Personal Representative, the party against whom collateral estoppel is being asserted, stands in the shoes of the Decedent who had sufficient identity of interest in the prior proceeding. Those proceedings involved the Decedent herein directly." Cady-Krech does not argue that the issue of her paternity was actually litigated and determined in the divorce proceedings, nor does she argue that the determination of that issue was essential to the divorce judgment. *See Flooring Brokers*, 324 Wis. 2d 196, ¶7. Her argument regarding the first step of the issue preclusion analysis is therefore undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating the court of appeals need not address undeveloped arguments).

¶18    In addition, Cady-Krech does not dispute—or even acknowledge—the circuit court's finding that the issue of her paternity was not fully litigated in the divorce action. The failure to address the grounds on which the circuit court ruled constitutes a concession of the ruling's validity. *West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶49, 354 Wis. 2d 130, 848 N.W.2d 875. Cady-Krech also failed to file a reply brief, and, as such, she has not responded to Mitchell, Pavelka, and Mulligan's argument that she failed to satisfy the first step of the issue preclusion analysis. We therefore deem that point conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶19    Regardless of these deficiencies, we also note that the only evidence in the appellate record regarding the divorce proceedings is the divorce judgment, which merely states that both Cady-Krech and Mitchell were children of the marriage between Mikulewicz and their mother. There is nothing in the appellate record to indicate that the issue of Cady-Krech's paternity was ever raised—much

less actually litigated—in the divorce proceedings. Nor is there any evidence in the record indicating that the issue of Cady-Krech's paternity was essential to the divorce judgment. On these facts, we agree with the circuit court that Cady-Krech failed to meet her burden under the first step of the issue preclusion analysis. The court therefore properly rejected Cady-Krech's argument that issue preclusion barred the court from ordering genetic testing and from relying on the test results to determine whether she qualified as Mikulewicz's heir.[2]

## II. Cady-Krech's status as an heir

¶20   Cady-Krech next argues that even if issue preclusion does not apply, the circuit court erred by determining that she is not Mikulewicz's heir for purposes of intestate succession. When reviewing the circuit court's determination on that issue, we will defer to the court's credibility determinations, and we will not overturn the court's factual findings unless they are clearly erroneous. *Welytok v. Ziolkowski*, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359. However, the ultimate issue of whether Cady-Krech qualifies as an heir under the relevant statutes presents a question of law that we review independently. *See Schneider v. Schneider*, 150 Wis. 2d 286, 288-89, 441 N.W.2d 335 (Ct. App. 1989).

---

[2] Because we conclude Cady-Krech failed to satisfy the first step of the issue preclusion analysis, we need not address the second step. *See Flooring Brokers, Inc. v. Florstar Sales, Inc.*, 2010 WI App 40, ¶8, 324 Wis. 2d 196, 781 N.W.2d 248.

Furthermore, because we conclude Cady-Krech has failed to show that the issue of her paternity was actually litigated in the divorce proceedings or was essential to the divorce judgment, we need not address her assertion that the identity-of-parties requirement was satisfied because Mulligan, the personal representative, "stands in the shoes of" Mikulewicz, who was a party to the divorce action. In any event, however, we would refuse to consider that argument because it is unsupported by any citation to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶21 Under Wisconsin law, the term "heir" is defined as "any person … who is entitled under the statutes of intestate succession to an interest in property of a decedent." WIS. STAT. § 851.09. The basic rules for intestate succession are set forth in WIS. STAT. § 852.01. Subsection (1) of that statute, entitled "Who are heirs," provides that in the absence of a surviving spouse or domestic partner, any part of the decedent's net estate that is not disposed of by will passes "[t]o the issue, per stirpes." Sec. 852.01(1)(b). "Issue," in turn, means "children, grandchildren, great-grandchildren, and lineal descendants of more remote degrees, including those who occupy that relation by reason of adoption under s. 854.20 and nonmarital children and their lineal descendants to the extent provided by [WIS. STAT. §] 852.05." WIS. STAT. § 851.13.

¶22 The circuit court concluded that the evidence Cady-Krech had presented gave rise to a rebuttable presumption that she was Mikulewicz's biological daughter. The court further found, however, that the DNA test results rebutted that presumption. Cady-Krech asserts that the court erred because the DNA testing "did not prove or disprove anything in this matter." She contends the test results "merely outline the connection between three women [i.e., Cady-Krech, Mitchell, and Pavelka] without any additional information or evidence being presented demonstrating how those results connect to [Mikulewicz]." She further asserts that the court should not have relied on the DNA test results because no party offered any expert testimony interpreting those results.

¶23 Cady-Krech's arguments do not persuade us that the circuit court erred by relying on the DNA test results, or that its factual finding that the tests showed Cady-Krech was not Mikulewicz's biological daughter was clearly erroneous. Although the parties were unable to test Mikulewicz's DNA directly,

the tests comparing DNA from Cady-Krech, Mitchell, and Pavelka—along with several undisputed facts regarding their parentage—supported the court's determination that Mikulewicz was not Cady-Krech's biological father.

¶24 To explain, the DNA test results showed a 98.4% probability that Mitchell and Cady-Krech are half-siblings—i.e., that they share one common parent. It is undisputed that Mitchell and Cady-Krech have the same biological mother. Under WIS. STAT. § 891.41(1)(a), Mikulewicz is presumed to be Mitchell's biological father, as Mitchell was born during Mikulewicz's marriage to her mother. No evidence was presented to rebut that presumption, and Cady-Krech does not dispute that Mikulewicz was Mitchell's biological father. As a result, the DNA test showing that Cady-Krech and Mitchell share only one common parent strongly suggests that Mikulewicz was not Cady-Krech's biological father.

¶25 The other DNA test results further support that finding. The test comparing Mitchell's and Pavelka's DNA showed a 97.6% probability that they share one common parent. As it is undisputed that Mitchell and Pavelka do not share the same biological mother, the test result strongly indicates that they share the same biological father. Because it is undisputed that Mikulewicz was Mitchell's biological father, one can reasonably infer that Mikulewicz was also Pavelka's biological father. The test comparing Cady-Krech's and Pavelka's DNA, in turn, showed a 0.1% probability that they share a common parent. This result strongly indicates that Cady-Krech and Pavelka do not have the same biological father, and it therefore further supports a finding that Mikulewicz—who was Pavelka's biological father—was not Cady-Krech's biological father.

¶26 On these facts, the circuit court's finding that Mikulewicz was not Cady-Krech's biological father was not clearly erroneous. Although Cady-Krech complains on appeal that there was no expert testimony interpreting the DNA test results, she does not develop any argument as to why expert testimony was required. Again, we need not address undeveloped arguments. *See Pettit*, 171 Wis. 2d at 646-47. Moreover, in the circuit court, Cady-Krech's attorney expressly stated that Cady-Krech did not object to the court receiving the DNA test results. "We will not … blindside trial courts with reversals based on theories which did not originate in their forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

¶27 Cady-Krech next argues that she qualifies as Mikulewicz's "child," for purposes of intestate succession, because she was part of his "family circle." The only legal authority that Cady-Krech cites in support of that assertion, however, is easily distinguishable. *See Parsons v. Parsons*, 56 Wis. 2d 613, 203 N.W.2d 40 (1973). The issue in *Parsons* was whether a nonmarital grandchild of the decedent was entitled to inherit under the decedent's will. *See id.* at 616-17. In resolving that issue, the court applied a common law rule that the word "children" in a will is presumed to mean legitimate—i.e., marital—children, unless the child in question was "a part of the family circle." *Id.* at 619-20 (citation omitted).

¶28 *Parsons* is inapposite because this case involves intestate succession, not the interpretation of a will. Moreover, *Parsons* addressed the distinction between marital and nonmarital children; unlike this case, there was no dispute in *Parsons* as to whether the individual in question was the decedent's biological relative. Cady-Krech cites no authority in support of the proposition that, in the

absence of an adoptive relationship, the circuit court erred by interpreting the relevant statutes to require a biological relationship between her and Mikulewicz.

¶29 Cady-Krech next argues that she should be included as an heir of Mikulewicz under WIS. STAT. § 854.20 because the circumstances of this case show that a "de-facto adoption" occurred. As relevant here, § 854.20(1)(a) provides that a "legally adopted person is treated as a birth child of the person's adoptive parents … for purposes of any statute or other rule conferring rights upon children, issue, or relatives in connection with the law of intestate succession." As the circuit court correctly noted, there is no evidence in the record that Mikulewicz ever legally adopted Cady-Krech. In addition, Cady-Krech does not cite any legal authority in support of the proposition that "de-facto adoption" is recognized under Wisconsin law, either generally or for purposes of determining heirs for intestate succession. *See **Pettit***, 171 Wis. 2d at 646. We therefore reject her argument that she should have been included as Mikulewicz's heir under § 854.20.

¶30 Cady-Krech also argues that she qualifies to inherit from Mikulewicz under WIS. STAT. § 852.05. That statute provides that a child born to unmarried parents is treated the same as a child born to married parents with respect to intestate succession through the child's father if any of the following applies:

> (a) The father has been adjudicated to be the father in a paternity proceeding under [WIS. STAT.] ch. 767 or by final order or judgment of a court of competent jurisdiction in another state.
>
> (b) The father has admitted in open court that he is the father.
>
> (c) The father has acknowledged himself to be the father in writing signed by him.

13

Sec. 852.05(1)(a)-(c). Cady-Krech argues that under § 852.05, she should be treated as Mikulewicz's marital child for purposes of intestate succession because: (1) the Minnesota divorce judgment adjudicated Mikulewicz to be her father; and (2) the divorce judgment was "presumably" entered based on Mikulewicz's "written submissions to the Court, and later testimony and acknowledgment in open court," that he was her father.

¶31 Cady-Krech's argument misses the mark because WIS. STAT. § 852.05 "does not apply to a child who becomes a marital child by the subsequent marriage of the child's parents under [WIS. STAT. §] 767.803." Sec. 852.05(3)(a). As the circuit court correctly noted, under WIS. STAT. § 891.41(1)(b), Mikulewicz's marriage to Cady-Krech's mother gave rise to a rebuttable presumption that Mikulewicz was her biological father. As explained above, however, the court found that presumption had been rebutted because the DNA test results, combined with other undisputed evidence, showed that Cady-Krech was not actually Mikulewicz's biological daughter. Again, Cady-Krech has not shown that the court's finding in that regard was clearly erroneous. We therefore reject Cady-Krech's argument that the court should have included her as an heir of Mikulewicz under § 852.05.[3]

---

[3] In addition, we again observe that Cady-Krech failed to file a reply brief in this appeal, and, as a result, she has not responded to the arguments advanced by Mitchell, Pavelka, and Mulligan in support of the circuit court's determination that she does not qualify as Mikulewicz's heir. We could reject Cady-Krech's arguments on that basis alone, as unrefuted arguments may be deemed conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

### III. Public policy

¶32    Finally, Cady-Krech asserts that public policy considerations compel a conclusion that she should be treated as Mikulewicz's heir for purposes of intestate succession. She asserts that regardless of any DNA testing, Mikulewicz "considered [her] to be his child and on multiple occasions took action to secure that relationship and primary custody of her in his divorce proceedings." She contends that by disregarding those actions and holding that "all that matters is DNA evidence," this court would create a "very slippery slope and would require all fathers in Wisconsin, whether they create a will or not, to ensure they have a DNA test done for their children to ensure their children inherit from them following their death." She further asserts that public policy does not favor a personal representative "seeking to un-establish paternity and nullify a pervious court Judgment, when the Decedent did not do so during his lifetime," and she contends that the personal representative's attempt to do so in this case "runs contrary to [Mikulewicz's] lifelong intent toward inclusion of [Cady-Krech] rather than exclusion."

¶33    We reject Cady-Krech's public policy argument because, once again, she fails to cite any legal authority supporting it. *See **Pettit***, 171 Wis. 2d at 646. Beyond that deficiency, however, we also reject her argument on its merits. The circuit court found credible Pavelka's testimony that Mikulewicz knew Cady-Krech was not his biological daughter, and Cady-Krech does not challenge that credibility determination on appeal. The court also found that there was no evidence that Mikulewicz had formally adopted Cady-Krech. As the court aptly noted, if Mikulewicz wanted a portion of his estate to pass to Cady-Krech, even though she was not his biological or adopted daughter, he could have easily accomplished that result by executing a will that specifically named her as one of

his heirs. Any father who has reason to believe that an individual whom he has raised and treated as his child is not actually his biological offspring could do the same. Cady-Krech's "slippery slope" argument is therefore unfounded and does not persuade us that the court erred by excluding Cady-Krech as Mikulewicz's heir for purposes of intestate succession.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.