HOFFMAN CHEVROLET, INC., Garnishee v.
WASHINGTON COUNTY NATIONAL
SAVINGS BANK

[No. 758, September Term, 1981.]

*Decided January 12, 1982.*

The cause was argued before Gilbert, C. J., and Moore
and MacDaniel, JJ.

*Donald E. Beachley,* with whom were *Miller, Miller & Oliver* on the brief, for appellant.

*David K. Poole, Jr.,* for appellee.

Gilbert, C. J., delivered the opinion of the Court.

"A writ of attachment may be likened to a dam. Once it is laid in the hands of the garnishee it spontaneously creates a reservoir or collecting pool, from all assets, liquid or otherwise, that are then present or which may flow to the garnishee at any time prior to trial and judgment." [1]

In this appeal we are asked by Hoffman Chevrolet, Inc., the garnishee-appellant (Hoffman) to reverse a summary judgment entered against it by the Circuit Court for Washington County (Corderman, J.) in favor of the attaching creditor-appellee, Washington County National Savings Bank (Bank). [2]

## THE FACTS

Bank held two cognovit notes[3] issued by Victor McSherry, a then employee of Hoffman. The notes being in default, Bank, on November 28, 1979, confessed judgment against McSherry and caused a writ of attachment to be laid in the hands of Hoffman.[4] An answer was filed by Hoffman, as garnishee, in which it asserted that McSherry's employment was terminated on November 30, 1979. Hoffman also said that it and McSherry "were jointly and severally liable to the Hagerstown Trust Company for the financing of a motor

---

1. Attributed to Jim Oigan. *See The University of Baltimore Law Forum,* Fall 1981, Vol. XI, No. 1, pg. 21, n. 12.

2. The judgment debtor, Victor McSherry, is not a party to the appeal. In any event, irrespective of the outcome, all he will receive is a credit against the sum owed by him to one or the other of the two litigants.

3. While the record extract evidences two promissory notes, one dated September 6, 1978, in the amount of $8,942.40, and one dated December 21, 1977, in the amount of $5,162.04, the record before us consists only of the September 6 note and the action on that note.

4. A second writ of attachment was issued on February 7, 1980. We have no need to consider that second attachment.

home on which there was a balance in excess of $12,000. That the Garnishee has been advised that the motor home is not in existence and the contract is in default. The last pay check of ... McSherry ... has been applied to the outstanding indebtedness." [5]

Bank immediately served interrogatories upon Hoffman and subsequently took the deposition of the garnishee's Treasurer and Office Manager, John W. Martin. That deposition revealed that McSherry participated in the National Automobile Dealers and Associates Retirement Trust (NADART) Pension Plan which is funded by employer and employee contributions. The plan provides that upon resignation or discharge from employment, a participant is entitled to a return of his contributions and a certain percentage of the employer's contributions which have been credited to the participant's account.

Following McSherry's termination of employment with Hoffman, he applied to NADART for a refund of his contributions and any other sums in his particular account. The date that McSherry asked NADART for the funds is not clear from the record except that it was sometime "in early December, 1979." NADART issued a check to McSherry in the amount of $8,736.63 and forwarded it to Hoffman, where it was received "before Christmas" 1979.

Martin testified in his deposition that the liability of Hoffman and McSherry to the Hagerstown Trust Company was grounded on a note in the amount of $22,347.60. Martin said that the security for the note was a Winnebago motor home.

At some point in time, Hoffman became aware that the Winnebago may have never existed, and, we infer, Hoffman pressed McSherry for payment on the note. As a result, McSherry agreed to apply the NADART funds to reduce the joint indebtedness.

---

5. Apparently McSherry was due wages in the amount of $677.84 and retained pension contributions in the amount of $206.70. Appellant does not contest that these are attachable funds.

Asserting a setoff based on its claim against McSherry, Hoffman refused to turn over the NADART check in its hands to the garnishor. Instead, Hoffman delivered the check to the Hagerstown Trust Company, which, in turn, secured the endorsement of McSherry. The trust company applied the proceeds to the balance due it by McSherry and Hoffman.

## I.

Hoffman, firstly, contends that the NADART check was not subject to garnishment because of a spendthrift provision in the NADART plan. There is no question that this State recognizes generally the efficacy of spendthrift provisions to prevent a creditor's reaching funds of the debtor held in trust. *Watterson v. Edgerly,* 40 Md. App. 230, 388 A.2d 934 (1978). Appellant would have us hold that the spendthrift clause of the pension trust protected the refund check from attachment or other legal process.

Hoffman argues that since the check had not actually reached the hands of McSherry the trust was still in effect and, therefore, not subject to the claims of creditors. In support of his argument, appellant cites *Hildreth Press Employees Federal Credit Union v. Connecticut General Life Insurance Co.,* 30 Conn. Supp. 513, 295 A.2d 54, *cert. denied,* 163 Conn. 643, 295 A.2d 669 (1972), in which the court held that a pension trust containing a spendthrift provision was still in effect even though the trustees had "approved" a cash payment of accumulated funds to the debtor. Since Connecticut does not recognize a "dry" trust, the court reasoned that until there was actual payment to the beneficiary, the funds were protected from creditors by the spendthrift provision. *Hildreth,* however, is readily distinguishable from the instant action. Here, the trustees had not only approved the transaction, but had issued the check and mailed it to the beneficiary albeit in care of his employer. Thus, there was more than mere approval of a payment; there was a tender of payment.

We think that when the NADART trustees issued the

refund check to McSherry and forwarded it to Hoffman, the trust terminated insofar as McSherry was concerned. *See Burnham v. Baltimore Gas & Electric Co.*, 217 Md. 507, 144 A.2d 80 (1958).

Moreover, this State recognizes the concept of a dry or passive trust, *Burnham v. Baltimore Gas & Electric Co., supra*, and, "[u]nder [a] *passive or dry trust* the estate of the cestui que trust is . . . subject to levy and sale under execution against him. . . ." 90 CJS, *Trusts* § 197, p. 109 (1955), (emphasis in original). *Knettle v. Knettle,* 190 Wash. 395, 68 P.2d 218 (1937).

The check in the instant case constituted a credit in the hands of the garnishee belonging to McSherry and was, therefore, subject to attachment. Md. Cts. & Jud. Proc. (1974) Code Ann. § 3-305; Md. Rule G45 a.

## II.

Hoffman, secondly, argues that even if the check were subject to attachment, the garnishee had a legitimate setoff against McSherry and, hence, against the garnishor.

"[I]n essence and effect garnishment is a suit by the debtor against the garnishee for the use and benefit of the attaching creditor and, therefore, . . . the rights of the creditor vis a vis the garnishee cannot rise above those of the debtor." *Messall v. Suburban Trust Co.*, 244 Md. 502, 506, 224 A.2d 419, 421 (1966).

The *Messall* Court, citing *Farmers and Merchants Bank v. Franklin Bank,* 31 Md. 404 (1869), made crystalline that the rights of the respective parties in attachment are determined at the time of trial and judgment, not at the time of the laying of the attachment. This principle bound all property of McSherry that came into the garnishee's hands before trial and judgment. *Messall, supra* at 507, 224 A.2d at 421. The check, therefore, was subject to attachment notwithstanding that it was delivered to Hoffman approximately one week after the initial attachment was laid.

Because it co-signed a promissory note with McSherry and subsequently discovered that the security for that note allegedly never existed, Hoffman avers that it possessed a legitimate setoff against McSherry and, *ergo,* against the garnishor. While we agree that the *Messall* reasoning is applicable to all garnishment proceedings, our agreement with that general principle avails Hoffman naught under the facts of this case.

There is no evidence whatsoever in the record that the Hagerstown Trust Company loan was in default or that Hoffman had any other cognizable claim in fraud which it could assert against McSherry. Nevertheless, Hoffman says that because any claim "up to the time of trial" may be asserted as a setoff, the granting of a summary judgment was improper since a claim "might" have arisen before trial on the merits, Hoffman's reading of *Messall* is myopic. *Messall* does not negate the entry of a summary judgment whenever there is no genuine dispute of a material fact. Md. Rule 610. In short, merely because *Messall* uses the phrase "time of trial and judgment" does not mean that the case must go to trial. *Messall* is satisfied if a summary judgment is validly entered.

In the case now before us, Hoffman not only failed to demonstrate a genuine dispute of a material fact but introduced no affidavits or exhibits evidencing a claim against McSherry. Instead, Hoffman relied entirely on the deposition of Martin in which he testified that there was a joint indebtedness to Hagerstown Trust Company, that McSherry agreed to apply the NADART funds to that indebtedness, and that a Winnebago motor home which was the subject of a security agreement signed by Hoffman and McSherry had "apparently" never existed.

Hoffman offered general allegations that the collateral which had been used as security for a loan from Hagerstown Trust Company *may* never have existed, but those allegations were unsupported by any evidence. There were no facts before the trial court from which it could properly

infer that the loan to Hagerstown Trust Company was in default.

*Judgment affirmed.*
*Costs to be paid by appellant.*