In the Matter of the TRUST CREATED UNDER AGREEMENT WITH Daniel T. McLAUGHLIN dated December 17, 1969.

Nos. C8–83–1010, Cx–83–1185.

Supreme Court of Minnesota.

Jan. 25, 1985.

Richard I. Diamond, D. Kenneth Lindgren, Minneapolis, for appellant.

Steve A. Brand, St. Paul, for respondent.

## OPINION

AMDAHL, Chief Justice.

These consolidated appeals involve the effect of two provisions in a trust instrument created by Daniel T. McLaughlin. The trial court determined that Kelly Marie Dibble was included in the class of "then living issue" in a residue distribution clause under the terms of the trust created by her natural paternal grandfather. The trial court also found that a spendthrift clause in the trust protected a beneficiary's interest in the residue from garnishment after termination of the trust but before distribution of the trust assets. We affirm.

1. In December 1961, Kelly Marie was born to George McLaughlin, son of trust settlor Daniel T. McLaughlin, and his wife Kathleen. George died 2 months after Kelly Marie's birth. Kathleen, his widow, subsequently married Thomas Dibble. In 1966, Thomas Dibble adopted Kelly Marie. Daniel T. McLaughlin created the trust involved in this appeal in December 1969. He amended it 2 months later, a few days before he died.

The trust, as amended, provides that upon the death of the settlor the trust assets remaining "shall constitute a single trust for the benefit of the donor's issue which shall be administered pursuant to the provisions of Article IV." Article IV provides for various distributions to Daniel's four surviving children and then further provides:

> Upon the date the youngest child of the donor attains the age of 23 years, or upon the death of the last child of the donor who has not attained the age of 23 years, whichever event occurs earlier, the then remaining assets of the trust shall be distributed outright and free of trust *to the then living issue of the donor* in equal share, per stirpes. [Emphasis added.]

Article VII defines "issue" and "per stirpes" as follows:

> A. "Issue" means all persons who are descended from the person referred to [in this case the settlor], either by legitimate birth to or legal adoption by him or any of his legitimately born or legally adopted descendants.

> \* \* \* \*

> C. "Per Stirpes" means in equal shares among living children and the issue of deceased children, the latter taking by right of representation.

William P. McLaughlin, settlor's youngest child, reached age 23 on November 9, 1982. The trustees petitioned the district court for an order authorizing termination of the trust and requested instructions from the court as to final distribution of the trust estate. Specifically, they requested the court to determine whether Kelly Marie was included in the class of "then living issue" entitled to a share in final distribution. The trustees were of the opinion that Kelly Marie should be excluded from the final distribution. Kelly Marie opposed the petition and asked the court to include her within the class of "then living issue" and to instruct the trustees to distribute one-fifth of the remaining assets to her. Settlor's daughter, Kathleen McLaughlin Countryman, petitioned the court for an order excluding Kelly Marie from the class of "then living issue" and allowing final distribution of the trust's remaining assets to the children of the settlor.

The court's purpose in construing a trust is to ascertain the intent of the settlor. *Northwestern Nat. Bank of Minneapolis v. Simons,* 308 Minn. 243, 242 N.W.2d 78 (1976); *In Re Trusts Created by Agreement with Harrington,* 311 Minn. 403, 405–06, 250 N.W.2d 163, 165 (1977). Where the language of the trust instrument is not ambiguous, the intent of the settlor must be ascertained from the four corners of the agreement, without resort to

extrinsic evidence of intent. *In Re Trusts Created by Will of Hartman,* 347 N.W.2d 480, 482–03 (Minn.1984); *In Re Campbell's Trust,* 258 N.W.2d 856, 861 (Minn.1977); *In Re Trusteeship Created by Fiske,* 242 Minn. 452, 460, 65 N.W.2d 906, 910–11 (1954). Therefore, the first step in the analysis of a trust instrument is to determine the intent of the settlor from the plain language of the instrument.

▮ In this case, the trust instrument is clear and unambiguous, so there is no need to resort to extrinsic evidence of the settlor's intent. Article IV provides that the remaining assets be distributed to the "then living issue of the donor * * *." Article VII defines "issue" as "all persons who are descended from the [settlor], either by legitimate birth to or legal adoption by him or any of his legitimately born or legally adopted descendants." Kelly Marie Dibble, as the legitimate daughter of the deceased son of the settlor, is a person who is descended from the settlor. Nothing in the trust agreement causes her adoption to preclude her from membership in the class of "issue" of this settlor. Under the plain language of the trust instrument, Kelly Marie takes an equal share of the trust as a member of the class of "then living issue." [1]

2. The second issue in this consolidated appeal involves the effect of a spendthrift clause contained in the McLaughlin trust upon an attempted garnishment. Appellant Bank of Newport, a California corporation, served a garnishment summons upon trustees of the McLaughlin trust, attempting to recover a default judgment entered against John P. McLaughlin, settlor's son and trust beneficiary, and John's wife, Victoria McLaughlin. The trustees claimed that the trust assets were exempt because of a spendthrift clause in the trust. They petitioned the trial court for, among other relief, instructions on the effect of the spendthrift clause on the garnishment. The trial court instructed the trustees to disregard the attempted garnishment and distribute directly to John P. McLaughlin any property due him.

The McLaughlin trust (Article V) contained the following spendthrift provision:

Notwithstanding anything apparently to the contrary elsewhere contained in this agreement:

A. Neither principal nor income of any trust nor any beneficiary's interest therein, while undistributed in fact, shall be subject to alienation, assignment, encumbrance, appointment or anticipation by the beneficiary, nor to garnishment, attachment, execution or bankruptcy proceedings, nor to claims for alimony or support or any other claims of any creditor or other person against the beneficiary, nor to any other transfer, voluntary or involuntary, from the beneficiary.

This court has long recognized the validity of spendthrift provisions and has acknowledged that donors may dispose of their property as they see fit, including exempting their gifts from the claims of donees' creditors. *Erickson v. Erickson,* 197 Minn. 70, 266 N.W. 161 (1936). In *Erickson,* this court considered a trust provision which stated that "no beneficiary shall have any power to sell, assign, transfer, encumber, or in any other manner to anticipate or dispose of his or her interest in any such trust estate or the income produced thereby prior to the actual distribution thereof by the trustees to said beneficiary." *Id.* at 73, 266 N.W. at 162. Noting that the settlor's intent must control the enforcement of a spendthrift trust provision, this court held that both trust in-

---

1. When the trust language is clear and unambiguous, we do not look beyond the instrument. We note, however, that policy favoring a child in Kelly Marie's situation is evident in the current adoption statute, which provides in part:

If a parent dies and a child is subsequently adopted by a stepparent who is the spouse of a surviving parent, any rights of inheritance of the child or the child's issue from or through the deceased parent of the child which exist at the time of the death of that parent *shall not be affected by adoption.*

Minn.Stat. § 259.29, subd. 1(a) (1982) (emphasis added). It is a welcome circumstance when current social policy coincides with the plain language of the instrument.

come and principal were free from creditor's claims and "protected in transmission until actually paid over to the beneficiary." *Id.* at 77, 266 N.W. at 163. Thus, even though the trustees had allocated to the beneficiary the first of four installments of principal payable to him, the spendthrift provision prevented the imposition of a lien upon the trust principal because the principal had not been "actually distributed."

The McLaughlin trust instrument prohibits garnishment of the principal or income of any trust beneficiary's interest "while undistributed in fact." Relying on *Erickson,* respondent trustees contend that this phrase clearly evidences the settlor's intent that the spendthrift provision apply until actual distribution of the trust estate and, therefore, that the clause prohibits garnishment of John McLaughlin's interest at this time. Appellant Bank of Newport argues that the trustees have no active duties left to perform; that title to the trust assets vested immediately and absolutely in the beneficiaries upon the 23rd birthday of settlor's youngest child; that beneficiary John McLaughlin has been entitled to demand his interest since that time; and, therefore, that the spendthrift provision is no longer applicable. Appellant contends that *Erickson* is inapposite because *Erickson* deals with an active trust, while the McLaughlin trust is passive, the proceeds having vested. Appellant relies on cases which hold that when the trustee's duties have terminated and his only duty is to distribute a definite sum to the beneficiary, then garnishment served on a trustee is effective. *See Hoffman Chev. v. Washington Cty. Nat. Sav.,* 50 Md.App. 594, 439 A.2d 50 (Md.Ct.Spec.App.1982) (garnishment effective where trustees approved and tendered payment to employer of pension trust beneficiary);[2] *First National Bank of Omaha v. First Cadco Corp.,* 189 Neb. 734, 205 N.W.2d 115 (1973) (garnishment effective where trust had terminated

and sole beneficiary failed to demand delivery of the proceeds).

We distinguish the present case from those relied upon by appellant and find *Erickson* controlling. In the present case, John McLaughlin is one of several beneficiaries whose interests have yet to be ascertained. Although terminated, the trust continues for a reasonable time during which the trustees have the power to perform acts necessary to wind up the trust. *See* G. Bogert, The Law of Trusts and Trustees § 1010 (Rev. ed. 1983). Where, as here, it is difficult to ascertain the intended beneficiaries, the trustees are entitled to have the court pass upon the trust accounts and make a decree of distribution before the trustees make a final distribution of trust property. *See* A. Scott, The Law of Trusts § 345.1 (3d ed. 1967). For their protection, respondent trustees have availed themselves of this opportunity. Not until all interests have been ascertained in fact and a final accounting made will the trust proceeds be distributed "in fact."

The trial court found that the trustees have not "unduly delayed" in winding up administration of the trust; appellant Bank of Newport does not challenge this finding. We may have decided differently had there been evidence of unreasonable delay on the part of the trustees or evidence of the beneficiary's intent to defraud his creditors by leaving assets, which he has a right to demand, in a spendthrift trust. On the facts of this case, however, we hold that the spendthrift provision remains in force after termination of the trust throughout the winding up period until distribution in fact of the proceeds. The attempted garnishment of John P. McLaughlin's remainder interest by appellant Bank of Newport is ineffective.

Affirmed.

**2.** We note that the Maryland Court of Appeals disagreed with the Court of Special Appeals' analysis of this issue on appeal in *Hoffman Chev. v. Washington County Nat. Sav.,* 297 Md. 691, 467 A.2d 758 (1983), and held that the pension trust did not become passive until the beneficiary, not his employer, "actually received" the benefits; the spendthrift trust provision protected the beneficiary until that time.

KELLEY, Justice (concurring in part and dissenting in part).

While I concur in the majority's holding that the attempted garnishment by the Bank of Newport of John P. McLaughlin's remainder interest in the trust, in the circumstances existing in this case, is ineffective, I respectfully dissent from the court's opinion holding that Kelly Marie Dibble shares equally in the distribution of the trust remainder.

It is axiomatic that the obligation of the court is to ascertain the intent of the settlor. *In re Trust Created by Moulton*, 233 Minn. 286, 289, 46 N.W.2d 667, 669 (1951); *Northwestern National Bank v. Simons*, 308 Minn. 243, 245, 242 N.W.2d 78, 79 (1976). The majority concludes the language of the trust instrument is unambiguous, and, therefore, a court may not resort to extrinsic evidence to ascertain the settlor's intent. It is with that conclusion I disagree. First, when considered in the light of the circumstances that existed at the time the trust was executed and at the time it became irrevocable, it seems clear to me that there exists ambiguity in the instrument itself. Secondly, it seems clear to me that the majority's decision, rather than giving effect to the settlor's intent, works to completely frustrate it.

It appears that in arriving at its decision the majority looked only at the trust instrument itself without considering the circumstances and understanding of the settlor at the time of the creation of the trust or at the time it became irrevocable. My understanding of the law is that it is only when "[a]bsent tokens of meaning other than such as the language itself imports, intention must be found exclusively in the [trust] language." *See In re Trust under Will of Holden*, 207 Minn. 211, 215, 291 N.W. 104, 107 (1940); *First & American National Bank v. Higgins*, 208 Minn. 295, 302, 293 N.W. 585, 590 (1940). In this case, I submit, the meaning of the language used by Daniel T. McLaughlin has a meaning controlled "by context and surrounding circumstances". *Id.*

From the record furnished us, it appears that Daniel T. McLaughlin disapproved of his son's marriage to Kelly Marie's mother, and, indeed, had little to do with Kelly Marie or her mother following the marriage—to the extent he forbade them from coming into his home. The settlor never approved of his son George's marriage. He refused to grant George, then a minor, his consent to marry. Upon learning of Kelly Marie's birth, Daniel T. McLaughlin instructed his children that Kathleen and Kelly Marie "were not permitted to step foot in his house." Following George's death, Daniel T. McLaughlin learned of Kathleen's marriage to Thomas Dibble and Thomas Dibble's adoption of Kelly Marie in 1966. Besides harboring a deep bitterness towards George's wife and widow, the settlor did not consider Kelly Marie to be his grandchild or the natural object of his bounty.

The trust here involved was drafted in 1969 and amended in 1970. From 1951 to 1979 Minn.Stat. § 259.29 (1978) provided in part:

> After a decree of adoption is entered the natural parents of an adopted child shall be relieved of all parental responsibilities for the child, and they shall not exercise or have any rights over the adopted child or his property. The child shall not owe his natural parents or their relatives any legal duty *nor shall he inherit from his natural parents or kindred.* (emphasis added)

This was the law in effect at the time Kelly Marie was adopted by her stepfather; at the time Daniel T. McLaughlin created the trust; and at the time Daniel T. McLaughlin died, rendering the trust irrevocable.

Daniel T. McLaughlin was a lawyer himself, although not actively engaged in the practice of law. Presumably, he knew that under the law, at least from 1952 until the time the trust instrument was drafted, that Kelly Marie, having been adopted out of the family, had no legal claim on his bounty under the inheritance statute. In defining "issue" in the trust instrument, he provided for children adopted into the family but

made no provision for children adopted out of the family. To me this evidence suggests that settlor never considered Kelly Marie a member of his family, if not before her adoption, then certainly after it. I suggest that when Daniel T. McLaughlin used the words "living issue" in the trust document, he did so with knowledge and reference that Kelly Marie, having been adopted out of the family, would not legally be considered his "living issue". Therefore, the term as used was ambiguous, and in order to ascertain the true intent of the testator, the court may look to the surrounding circumstances to ascertain the context in which the term was used.

The Restatement (First) of Property, § 265, comment e (1940), also supports this conclusion. Section 265 sets forth the rule of construction that when a limitation is in favor of the "issue" the child continues to be "issue" of its natural parents, unless the process of adoption excludes such child from being able to take by intestate succession from its natural parents. To whatever extent the adoption statute disaffiliates the child from its natural parents by denying such child the power to take from such parents by intestate succession, the child ceases to be "issue" of its natural parents for all purposes.

In this case the trial court never reached the issue of testator's intent as ascertained by consideration of the surrounding circumstances. While ordinarily the determination of such intent is a question for the fact finder, when the judge hears the case without a jury and decides a fact issue on written evidence alone, as here, an appellate court may make its independent assessment of the evidence. *In re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225–226, 243 N.W.2d 302, 305 (1976), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). In my view, the weight of the evidence indicates clearly that Daniel T. McLaughlin did not intend to include Kelly Marie in the distribution of the trust assets. Accordingly, I would reverse.

YETKA, Justice (dissenting).

I join in the dissent of Justice Kelley.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Kelley.