550 A.2d 407

**BALTIMORE & OHIO RAILROAD COMPANY, et al.**

v.

**EQUITABLE BANK, N.A.**

No. 349, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Dec. 1, 1988.

Alan M. Grochal (H. Russell Smouse and D. Christopher Ohly, on the brief), Baltimore, for appellants.

Christine M. Barilla (Richard M. Kremen and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and KARWACKI, JJ.

KARWACKI, Judge.

Baltimore & Ohio Railroad Company (Railroad) and its subrogated insurance companies appeal from a judgment entered by the Circuit Court for Baltimore City after it ruled that their amended complaint against the appellee, Equitable Bank, N.A. (Equitable), failed to state a claim upon which relief could be granted. That amended complaint sought compensatory and punitive damages for the alleged conversion of Railroad's funds by Equitable. In reviewing that judgment we assume the truth of all factual allegations made by the Railroad. *Leese v. Baltimore County,* 64 Md.App. 442, 453, 497 A.2d 159 (1985). Additionally, the hearing court properly took judicial notice of the record in its court of earlier proceedings between the parties herein in a related case, and we shall consider the allegations of the appellants' amended complaint in light of that record. *Evans v. Shiloh Baptist Church,* 196 Md. 543, 548, 77 A.2d 160 (1950). So viewed, the record before us discloses the following facts.

On February 11, 1985, Railroad sued Richard W. Gartin and Sharon R. Gartin, his wife, in the Circuit Court for Baltimore City. Railroad alleged that Mr. Gartin, who had been employed as its freight claims director, and Mrs. Gartin had embezzled $2,783,000 from Railroad. Furthermore, Railroad asserted that this conversion of its assets had been accomplished by Mr. Gartin and Mrs. Gartin by submitting fictitious claims for freight losses and damages to Railroad and thereafter appropriating the payment of those fraudulent claims to their own use. Railroad sought recovery of $2,783,000 in compensatory damages and $5,000,000 in punitive damages from the Gartins.

At the time Railroad filed its complaint, it also filed a verified application for attachment before judgment. The court ordered that the writ of attachment issue on February 11, 1985, and the next day one of those writs was served

upon Equitable where the Gartins maintained several accounts. Equitable filed its answer to the writ of attachment on March 7, 1985. It admitted that it was indebted to the Gartins on various deposit accounts. Equitable further reported that, after setting off a debt due by the Gartins to it on February 22, 1985, on a promissory note dated January 30, 1985, in the amount of $31,582.79, the balance due the Gartins on the deposit accounts was $108,746.49. Neither Railroad nor the Gartins filed any pleading challenging this confession of assets by Equitable.

Meanwhile, the Gartins were both served with process on Railroad's complaint on February 14, 1985. The Gartins denied all allegations made against them by Railroad. Nevertheless, with the assistance of their attorneys the Gartins negotiated a settlement of all claims against them by Railroad. A settlement agreement reciting their compromise, or more aptly the Gartins' surrender, was executed on April 15, 1985.

In that document the Gartins agreed to transfer substantially all of their real and personal property to Railroad in consideration of a release of all Railroad's claims against them and a voluntary dismissal of all suits filed against them by Railroad including the one pending in the Circuit Court for Baltimore City. Among the assets enumerated in the agreement as being transferred from the Gartins to Railroad were the accounts of the Gartins at Equitable. They were referred to by numbers with no mention of the amounts on deposit in each account. The numbers of the accounts set forth agreed with the numbers of the accounts which Equitable had earlier related in answering Railroad's attachment before judgment. On April 16, 1985, the court, at the request of the parties, "approved and ratified" the agreement and ordered that the pending action be dismissed without prejudice.

On March 19, 1987, appellants instituted the instant case against Equitable. They asserted that Equitable had converted funds of the Railroad when it set off the debt due Equitable by the Gartins on February 22, 1985, after the

writ of attachment before judgment was served upon it on February 12, 1985. In challenging the court's conclusion that appellants had not stated a cause of action for conversion, appellants present these questions to us:

1. Whether the lower court erred in dismissing the Railroad's amended complaint for failure to state a cause of action upon which relief might be granted.

2. Whether the rights of the Railroad to funds in the Equitable accounts are superior to the set-off rights asserted by Equitable, where the funds in those accounts can be traced directly to monies embezzled from the Railroad.

We answer the first question in the negative and explain why the second question was not generated under the pleadings in this case.

1.

In their amended complaint appellants attempted to set forth a cause of action in conversion. In *Staub v. Staub*, 37 Md.App. 141, 142–43, 376 A.2d 1129 (1977), we outlined the elements of that tort:

Conversion has been defined as a distinct act of ownership or dominion exerted by a person over the personal property of another which either denies the other's right or is inconsistent with it. "[T]he gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." Accordingly, a conversion occurs at such time as a person is deprived of property which he is entitled to possess. (Citations omitted.)

Appellants argue that by virtue of the attachment before judgment of Gartins' Equitable accounts, Equitable had actual or constructive notice of Railroad's interest in those accounts. Consequently, they posit that when the settlement agreement between Railroad and the Gartins was approved by the lower court, Railroad's attachment of those

accounts related back to the date it was served upon Equitable and Equitable's set-off against those funds thereafter constituted conversion. Appellants' reasoning is flawed.

The legal remedy of attachment before judgment is a pure creature of the statutes now codified as Cts. & Jud. Proc.Code Ann. §§ 3–302 through 3–304 (1984, 1988 Supp.). *Belcher v. Gov't Employees Ins. Co.,* 282 Md. 718, 720, 387 A.2d 770 (1978). The procedures governing the exercise of that special and limited statutory power by the circuit courts are found in Rules 2–115 and 2–645.[1]

■ Equitable conceded that it was placed on notice of Railroad's attachment interest in the accounts. In accordance with Rule 2–645(e) Equitable, as garnishee, responded to Railroad's attachment by admitting its indebtedness to the Gartins and asserting its right to set-off the debt owed

---

1. None of the parties in the case *sub judice* has recognized the apparent unlawful issuance of the attachment before judgment in connection with Railroad's complaint filed against the Gartins on February 11, 1985. In that complaint Railroad sought unliquidated damages for the allegedly tortious conduct of the Gartins. Railroad, in applying for the attachment before judgment, swore that the assets of the Gartins, who were residents of Maryland, were subject to such attachment because of their fraudulent conduct and the substantial likelihood that they would remove their assets from the State. The power of the court to issue the attachment before judgment under those circumstances, Cts. & Jud. Proc. Code Ann., § 3–303(e) is expressly limited by § 3–304:

 (a) *Attachment in actions based on contract or tort.*—An attachment under § 3–303(b), (d), and (g) of this subtitle may issue in an action based on contract, whether the damages are liquidated or unliquidated, or in an action based on tort.

 (b) *Attachment in actions based on contract only.*—An attachment under § 3–303(c), (e), and (f) of this subtitle may issue only in an action based on contract for liquidated damages.

 See *Levitt v. MD Deposit Ins. Fund,* 66 Md.App. 524, 533, 505 A.2d 140 (1986). Consequently, either Equitable or the Gartins could have successfully moved to ... "dissolve the attachment on the ground that the plaintiff is not entitled to attachment before judgment." Rule 2–115(g). Since neither did and the parties to the instant appeal have not raised the issue, we will not address the question of whether the attachment was a nullity.

it by the Gartins.[2] Railroad did not contest Equitable's answer. Under Rule 2–645(g) when, "the garnishee files a timely answer, the matters set forth in the answer shall be treated as established for the purpose of the garnishment proceeding unless the judgment creditor[3] files a reply contesting the answer within 30 days after its service." Since appellants failed to follow this procedure, even if a judgment *had been entered* against Equitable, Railroad could not have subsequently disputed Equitable's right to set-off funds.

 Moreover, even assuming that Railroad had replied to Equitable's answer to the writ of attachment, its allegation of conversion would be meritless in the case *sub judice*. In order to recover for conversion one must either have been in actual possession or have had the right to immediate possession in the converted asset. *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 64, 502 A.2d 1057 (1986). Railroad was never entitled to possess the funds in Gartins' Equitable accounts by virtue of the attachment since no judgment was ever entered in the suit brought by Railroad against the Gartins. Rule 2–115(d).

---

**2.** In his Memorandum Opinion the trial judge stated that "there is no doubt that Equitable should have proceeded under Rule 2–645(e) in answering as garnishee but it should also have proceeded under Rule 2–115(h) with regard to the set-off instead of using the 'answer of garnishee' in Rule 2–645(e) to take its set-off." We disagree. Rule 2–645(e) clearly sets out the procedure for a garnishee to answer a writ of attachment and assert any defenses it may have. Rules 2–115(h) and 2–643(e) cover the procedure to be used by third parties in asserting their rights in attached property. Such third parties are "strangers to the attachment." H. Sachs, *Poe's Pleading and Practice,* § 561, at 207 (6th ed. 1975). Equitable, as garnishee was not a "stranger" to the attachment and therefore was correct in proceeding under Rule 2–645(e).

**3.** In its brief Railroad contends that it was not a judgment creditor at the time of Equitable's answer, and that it was simply a party plaintiff. This ignores Rule 2–115(d) which states that in conducting garnishment proceedings before judgment under Rule 2–645 the plaintiff shall be treated as a judgment creditor.

■ We reject Railroad's argument that the voluntary dismissal and settlement agreement approved by the court, constituted a judgment. A voluntary dismissal without prejudice, under Rule 2–506 is an abandonment of the action; it settles no rights and is not a final disposition on the merits. *Williams v. Snyder, Administrator*, 221 Md. 262, 267, 155 A.2d 904 (1959); *Annapolis Urban Renewal v. Interlink*, 43 Md.App. 286, 291, 405 A.2d 313 (1979). Such a voluntary dismissal vitiates and annuls all prior proceedings and orders in a case. *Cf. A.B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2nd Cir.1952), *cert. denied*, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952).

Further, the court's approval of the settlement agreement was not a consent judgment as contemplated by Rule 2–612. Rather the order entered by the lower court was a settlement order, not a consent judgment. It did not set a specified amount of money to be paid or adjudicate any of the claims presented. A settlement order is not a judgment. *Ramsey, Inc. v. Davis*, 66 Md.App. 717, 725, 505 A.2d 899 (1986). In *Mitchell Properties v. Real Estate Title*, 62 Md.App. 473, 482, 490 A.2d 271 (1985) we stated:

> Although a settlement order resembles a final judgment, it is not the same. A settlement agreement is a contract which the parties enter into "for the settlement of a previously existing claim by a substituted performance." When this agreement is entered with the court, it is termed a settlement order; however, it is not a court order. Rather, it is a compromise between the parties, which they submit to the court to stay the proceedings in the case. (Citations omitted.)

Since there was no final judgment in the original case, the relation back theory proposed by appellants is not applicable. *See State v. Friedman*, 283 Md. 701, 707–08, 393 A.2d 1356 (1978).[4] Rule 2–115(d). Since there was no adjudication on the merits in the instant case, the rights of the

---

4. In Friedman, the Court of Appeals held that a lower court order determining priorities among competing claimants to a court registry fund created to hold property seized as a result of an attachment on

attaching creditor and the garnishee were never settled. It is "crystalline that the rights of the respective parties in attachment are determined at the time of trial and judgment, not the time of laying the attachment." *Hoffman Chevrolet v. Wash. Co. Nat'l Sav.,* 50 Md.App. 594, 598, 439 A.2d 50 (1982).

It has commonly been held that:

Where by expiration of time, or by reversal or other cause, a judgment against the defendant in the main action has ceased to be of force and effect, the garnishment proceedings lose their vitality, and a judgment therein against the garnishee is as completely without force and effect as the judgment against the defendant. 6 Am.Jur.2d *Attachment and Garnishment* § 385 (1963) (citing, *Grace v. Pierce,* 127 Miss 831, 90 So. 590 (1922), *Chicago Herald Co. v. Bryan,* 195 Mo. 590, 92 S.W. 906 (1906). *Cf. Jacobs v. Crown, Inc.,* 7 Conn.App. 296, 508 A.2d 812 (1986)).

This view is apposite to the instant case since under Rule 2–115(b), "the request for the writ of attachment and all further proceedings shall constitute a single action and shall be docketed accordingly." *Cf. Overmyer v. Lawyers Title Ins. Corp.,* 32 Md.App. 177, 183, 359 A.2d 260 (1976), commenting upon the former practice where the plaintiff's claim against the defendant and the plaintiff's attachment on original process issued upon a garnishee of the defendant were docketed as separate proceedings. Consequently, we hold that when Railroad voluntarily dismissed its action against the Gartins, its attachment of the Equitable accounts was dissolved and it lost whatever rights it had against Equitable by virtue of that attachment.

2.

■ Railroad contends that on February 22, 1985, the Equitable accounts contained traceable proceeds of the em-

---

original process was premature because there was no indication in the record as to whether the plaintiff had obtained a final judgment in its favor against the defendant.

bezzlement by the Gartins. The record, however, is devoid of any factual allegations which could lead to that inference. Furthermore, Railroad voluntarily dismissed its complaint against the Gartins which alleged fraud and took no steps to impose a constructive trust upon the allegedly traceable proceeds of the embezzlement in the Gartins' accounts at Equitable. In order to impose a constructive trust as a matter of law specific funds must be ascertained as traceable to fraudulent or wrongful conduct. *Bowie v. Ford*, 269 Md. 111, 118, 304 A.2d 803 (1973), *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980).

Finally, it is well settled that a bank, as garnishee of its depositor, may set off a mutual debt due by the depositor after service of a writ of attachment up until the time of trial and judgment. *Messall & Howe v. Suburban Trust Co.*, 244 Md. 502, 508–09, 224 A.2d 419 (1966). The creditor receives no better rights than those of the debtor against the garnishee. *Cocco v. Merchants Mortgage Co.*, 69 Md.App. 68, 72, 516 A.2d 596 (1986); *Hoffman Chev. v. Wash. Co. Nat'l Sav.*, *supra*, 50 Md.App. at 598, 439 A.2d 50. In *Cocco v. Merchants Mortgage Co.*, *supra*, 69 Md. App. at 72, 516 A.2d 596, this Court quoting *Messall* stated:

> The liability of the garnishee to the attaching creditor in respect of property or credits in his hands is determined ordinarily by what his accountability to the debtor would be if the debtor were in fact suing him. If by the exercise of any pre-existing bona fide contract right that accountability has been removed or lessened prior to trial, the garnishee's liability to the attaching creditor is correspondingly affected. The Maryland cases have spelled out that garnishment cannot have the effect of changing the nature of a contract between the garnishee and the debtor or of preventing the garnishee from performing an existing contract with a third person, all of which is to say the creditor is subrogated to the rights of the debtor and can recover only by the same right and to the same extent, as could the debtor if he were suing the garnishee. (Citations omitted.)

Since there was an existing contract between Equitable and the Gartins at the time of the attachment of Gartins' accounts at Equitable, namely their outstanding promissory note, Railroad's attachment of their bank accounts gave it no better rights than those of the Gartins against Equitable. Consequently, even if Railroad could prove that part of the funds which the Gartins stole from them were deposited in Equitable, their unexercised right to trace those funds would not be superior to Equitable's right to enforce its contract with the Gartins.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANTS.