OPINION
This appeal arises from the decision of the Jefferson County Common Pleas Court which granted summary judgment in favor of respondents-appellees For the following reasons, the decision of the trial court is affirmed.
On July 30, 1992, Jefferson County and the City of Steubenville contracted to jointly fund a feasibility study for the purpose of building a new jail complex. The Voinovich Companies were hired to conduct the study for $50,000. The contract to split the cost of the study, which was signed by representatives of the county and the city, stated that an occupancy agreement may be formulated between the county as lessor and the city as lessee after the jail site is selected. After site selection, construction began on a facility which would house a joint city/county jail among other things. Part of the facility's second level was planned as the location for the city police department and municipal court. On May 29, 1997, the county proposed to lease the space to the city for one dollar. The lease was to last twenty years and was then renewable upon renegotiation of the rent. Under the lease, the city was to provide free water and sewer service to the entire facility. Also, the city was to pay for its own utilities, insurance, and janitorial service. The city countered the county's proposal with its own lease proposal. The county as lessor informed the city that the lease was take-it-or-leave-it. Since the lease was not agreeable to the city, the city failed to sign by the June 12, 1997 deadline. Instead, the city began refurbishing old facilities to house its police department and municipal court.
Prior to this, on January 1, 1997, the county filed case number 97-CV-23 against the Voinovich Companies on various grounds involving problems with construction of the jail. The county later asked to amend its complaint to join the city as an indispensable party who had an interest in the jail. A hearing on this motion was held where City Manager Gary DuFour testified that the city was merely a potential tenant of the jail facility. The county then withdrew its joinder motion. The next day, on May 20, 1997, Judge Mascio released a judgment entry which held that the city will not be joined because it has no equitable or legal interest in the jail facility. On August 8, 1997, the county and the Voinovich Companies voluntarily dismissed case number 97-CV-23 without prejudice. The county stated that it was dismissing its suit because a criminal investigation and a federal civil suit were pending.
In the meantime, Attorney Dominic Bianco, who is the appellant in this appeal, filed a written demand on City Law Director S. Gary Repella asking that he file a declaratory action against the county to establish the city's right to occupy a portion of the jail facility. Because Repella refused, Bianco filed case number 97-CV-461 against the county on October 7, 1997. Pursuant to the authority of R.C. 733.59, Bianco represented the city as a taxpayer. Other defendants included the county auditor, the city, the city mayor, and the city manager. On November 17, 1997, the county and its auditor [collectively referred to as the county] moved for summary judgment on various grounds including that the May 20 judgment entry on joinder in case number 97-CV-23 was res judicata as to the issues in Bianco's suit. In response, Bianco filed a Civ.R. 60 (B) motion for relief from judgment in case number 97-CV-23 which was denied by Judge Mascio.[1]
Soon thereafter, a hearing on the county's summary judgment motion was held in front of Judge Knapp. On December 17, 1997, Judge Knapp released a judgment entry granting summary judgment in favor of the county. The judge found that there was no genuine issue of material fact presented by Bianco. He also held that, since the issues had been previously litigated by Judge Mascio, Bianco's complaint was barred by the doctrine of res judicata.
Bianco filed timely notice of appeal which was assigned case number 98-JE-8. On January 21, 1998, the court dismissed the case as to any remaining defendants. Bianco also filed notice of appeal from the January 21 order; this appeal was assigned case number 98-JE-13. These cases, 98-JE-8 and 98-JE-13, constitute the within appeal.
Bianco (hereinafter referred to as. appellant), sets forth the following assignment of error:
 "THE TRIAL COURT ERRED IN ORDERING THAT SUMMARY JUDGMENT BE ENTERED FOR DEFENDANTS, COUNTY OF JEFFERSON AND PATRICK J. MARSHALL, AUDITOR OF JEFFERSON COUNTY, AND THE COSTS BE ASSESSED AGAINST THE PLAINTIFF."
Appellant's assignment of error is divided into two subassignments, the first of which provides:
 "TRIAL COURT ERRED IN FINDING THAT THE FACTS AND ISSUES LISTED IN PLAINTIFF'S COMPLAINT HAVE BEEN PREVIOUSLY FULLY LITIGATED AND THE COMPLAINT IS BARRED BY RES JUDICATA."
The county argues and the trial court held that Judge Mascios May 20, 1997 order in case number 97-CV-23 is res judicata as to the city's rights with regards to the jail facility. Judge Mascio stated that the city has no legal or equitable interest in the facility. However, case number 97-CV-23 was later voluntarily dismissed without prejudice pursuant to Civ.R. 41 (A).
The Supreme Court faced a similar situation in De VillePhotography, Inc. v. Bowers (1959), 169 Ohio St. 267, where the Court held:
 "Although there is a paucity of law as to the effect of a voluntary dismissal without prejudice of a bankruptcy proceeding in relation to previous orders made therein, there is no dearth of authority as to the general rule on the subject.
 Where an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata." Id. at 272.
The Court cited favorably Annotation (1950), 11 A.L.R.2d 1407, which is entitled, "The effect of nonsuit, dismissal, or discontinuance of action on previous orders." Id. The Later Case Service Supplement to this annotation cites De Ville as authority for the proposition that a voluntary dismissal leaves the situation as if the suit had never been filed and "basically erases previous rulings and orders in the case. An enlightening explanation of the concept is found in the following passage:
 "A voluntary dismissal without prejudice, under [the civil rule,] is an abandonment of the action; it settles no rights and is not a final disposition on the merits. Such a voluntary dismissal vitiates and annuls all prior proceedings and orders in a case." Baltimore Ohio RR. Co. v. Ecruitable Bank, N.A. (1988), 77 Md. App. 320, 550 A.2d 407, 411 [Citations omitted]
Thus, Judge Mascio's May 20, 1997 judgment entry which purported to decide whether the city was an indispensable party in case number 97-CV-23 has no standing by itself and was essentially invalidated after case number 97-CV-23 was voluntarily dismissed without prejudice. After this dismissal, nothing that had occurred in 97-CV-23 had res judicata effect on subsequent actions. Therefore, the trial court incorrectly held and the county incorrectly argued that the May 20 judgment entry was res judicata as to the issues raised in the complaint in case number 97-CV-461. Appellant's first subassignment of error is sustained.
Besides the ground of res judicata, the trial court also granted summary judgment to the county on the ground that there was no genuine issue of material fact. Appellant's second subassignment of error contends:
 "TRIAL COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGMENT ON THE CONCLUSION THAT THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT."
Appellant asserts that there is a genuine issue as to whether the city is entitled to move into the designated area on the second floor of the jail facility. To recap, on May 15, 1997, the county sent a signed lease to the city to be accepted within two weeks. The proposed rent was one dollar. The term was twenty years, renewable after renegotiation of rent. The city was to provide free water and sewer service to the building. The city was required to pay for its own utilities, insurance, and janitorial services. The city sent a counter-lease to the county which agreed to all terms except the renegotiation of rent after twenty years and the city's responsibility for its own janitorial services. The county rejected the city's counter-lease and gave the city until June 12, 1997 to accept its lease. As a result, the city decided not to rent the space. We fail to see how the existence of this offer, counter-offer, and revived offer raises a genuine issue of fact with regards to whether certain lease terms were contracted for in the past.
Appellant cites a multitude of documents which he claims allude to the existence of an oral agreement wherein the county and the city agreed to formulate a lease for part of the county's jail facility in order for the city to house its police department and its municipal court.
On the day of the summary judgment hearing, appellant submitted the affidavit of City Manager Gary DuFour who stated in part:
 "10. That it was always understood and agreed that the City of Steubenville would have space in the Joint Jail Facility along with the Municipal Court, the Steubenville Police Department and prisoners at no rental cost but payment of utilities and liability insurance.
 11. That until June 12, 1997, the City and the County had always agreed that the City would have all the office space on Level 2 which was designed and constructed to house the Steubenville Police Department and the Steubenville Municipal Court and the right to house prisoners in the jail.
 12. That the City has always stood by its position and the final" draft of a lease submitted to the City was unconscionable and not in accordance with the prior understanding and agreements and denying the City its police powers."
Appellant's brief declares that the county "substantially breached the terms of its oral lease agreement, especially by submitting a final written lease in which the annual rental was only for a period of twenty years." However, appellant's complaint does not allege that an oral lease exists; it simply states that the city has occupancy rights by operation of law. When appellant was deposed he specifically stated that his complaint was not based upon a written or oral contract but was based upon general law. (Deposition at 28-29, 39, 42)
Appellant then argues that the fact that the county and the city jointly applied for a state grant to assist in funding the jail shows that the city's police department and municipal court have occupancy rights. However, the grant was for the jail itself, i.e. the housing of prisoners. Moreover, there exists no dispute that the county jail is to house city prisoners. Thus, this joint application does not show a genuine issue of material fact as to the right of city offices to occupy the jail facility's second floor.
Appellant's suggestion that a county tax and a bond levy to fund the jail may have passed because some citizens desired the jail facility to house the city police department and municipal court does not raise a genuine issue of material fact. As can be seen from the county's proposed lease, the city's proposed counter-lease, an official statement released by the county, and the contracts between the county and the Voinovich Companies, the county and city had always hoped to enter a lessor-lessee relationship with regards to the second floor of the jail facility. That the county designed this floor for the city police department and municipal court is not disputed. Nor is it disputed that a landlord-tenant relationship was desired. However, the city wanted to be able to renew the lease after twenty years for the same one dollar rental fee; whereas the county wanted to renegotiate the amount of rent after twenty years. Also, the city did not want to pay for its own janitorial service. Because the city refused to sign the lease that was signed by the county commissioners, a lessor-lessee relationship was never formed.
Furthermore, an oral lease which is to last more than one year is invalid. See R.C. 1335.04 which contains the Statute of Frauds as applied to interests in land. Appellant suggests that the exceptions of partial performance and promissory estoppel are applicable. However, helping to fund a feasibility study for a joint jail and granting zoning variances are not part performance of a lease of space for the city police department and the municipal court. These were actions taken by the city to facilitate the construction of a new jail which would house its prisoners. Appellant shows no change of position by the city in reliance on the alleged lease terms which would work to the city's detriment. See Weishaar v. Strimbu (1991), 76 Ohio App.3d 276.
Most importantly, Section 305.25 of the Revised Code mandates:
 "No contract entered into by the board of the county commissioners, or order made by it, shall be valid unless it has been assented to at a regular or special session of the board, and entered in the minutes of its proceedings by the county auditor or the clerk of the board."
The Sixth Appellate District refused to reverse a trial court's grant of summary judgment which was entered in favor of Huron County where the stringent procedural requirement of R.C. 305.25
was not followed. Knox Elec. Constr., Inc v. Huron CountyLandfill (June 30, 1993), Huron App. No. H-92-045, unreported. The court held that even where the plaintiff expended money in reliance on an alleged agreement by the county, there could be no legally binding contract in light of the noncompliance with R.C.305.25. Id. at 4. The court also disallowed recovery on quantum meruit or estoppel theories. Id. at 2, citing Buchanan Bridge Co.v. Campbell (1899), 60 Ohio St. 406, 420. Because there is no contention that taxpayer money was expended by the city, the situation in the case at bar presents an even more compelling reason to apply R.C. 305.25 to bar appellant from raising the allegation of an oral lease.
The board of county commissioners is statutorily permitted to come to an agreement with city council to lease county space for a city police station and municipal courts. See R.C. 307.29
authorizing the county as lessor and R.C. 715.16 (B) authorizing the city as lessee. However, the county commissioners must approve the lease before the county can be legally bound by any alleged terms. At the summary judgment hearing, the trial court repeatedly asked appellant if there was any legislation which evidenced the terms of the lease as proposed by appellant. Appellant merely points the court to the July 30, 1992 feasibility study agreement which was signed by the board of county commissioners and city council and which states:
 "Upon completion of the feasibility study, selection of a site and agreement by the parties to proceed with construction of a Joint Jail Facility, the County and the City may formulate an occupancy agreement. Said agreement to define the responsibilities and the City terms and conditions of the relationship with the County as Lessor and the City as Lessee including all financial terms with regards to capitalization and operation."
This passage is not evidence of a lease assented to by the board and entered on the minutes; it is not evidence of an oral lease; it is not even evidence of an agreement to agree. It merely demonstrates that besides combining their jails, the county and city "may formulate" some type of an occupancy agreement in the future. There is no meeting of the minds with regards to lease terms.
For all of the foregoing reasons, we fail to find a binding agreement on particular lease terms between the county and the city. After viewing the evidence in the light most favorable to appellant pursuant to Civ.R. 56 (C), we hold that reasonable minds can only come to a conclusion that is adverse to appellant. Because the county was entitled to judgment as a matter of law, appellant's second subassignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________ Joseph J. Vukovich, Judge
[1] Bianco appealed the denial of his motion for relief from judgment in case number 97-CV-23. This appeal was recently of inState ex rel. Stern v. The V. Companies (1999), Jefferson App. No. 97-JE-71, unreported, where we held that there existed no final order or judgment on the merits from which Bianco could have sought relief. Thus, since the trial court could not have granted Bianco's motion for relief, we dismissed the appeal. We based this decision on the same rationale and precedent that is set forth in the case at bar under appellant's first subassignment of error.